The People of the State of Illinois, Plaintiff-Appellee, v. Sylvester Hubbard, Junior, Defendant-Appellant.

Gen. No. 50,316.

First District, Fourth Division.

October 28, 1966.

Vernon T. Squires, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSES CHARGED IN THE INDICTMENTS
Rape and robbery.

JUDGMENT

The causes were consolidated for trial, and after a jury verdict finding defendant guilty of both offenses, the court imposed concurrent sentences of 25 to 50 years for rape and 5 to 10 years for robbery.

POINTS RAISED ON APPEAL

(1) The indictments insufficiently alleged the time and place of the crimes charged.

(2) Certain stricken testimony was so prejudicial as to require a new trial.

(3) Defendant was deprived of his right to counsel at the trial.

OPINION

■ (1) Defendant's contentions as to the insufficiency of the indictments are based on the fact that the place of the crimes is designated only as being within the County of Cook, and the time of the crimes as being on "January 39th [sic], 1964." These arguments, made in reliance upon section 111–3 of the Code of Criminal Procedure (Ill Rev Stats (1963), c 38, § 111–3), are no longer available to defendant, having been disposed of contrary to his position by the decisions in People v. Blanchett, 33 Ill2d 527, 212 NE2d 97; and People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323, affirmed, 34 Ill2d 179, 214 NE2d 765.

(2) By not contending here that the evidence failed to establish his guilt beyond a reasonable doubt, defendant has conceded that there is ample proof of his guilt to be found in the record, as indeed there is. Defendant does contend, however, that he was prejudiced by the testimony of one of the State's witnesses, Police Officer Booker T. Porter, who testified on direct examination to conversations he had engaged in with defendant at the police station shortly after his arrest. Part of his testimony follows:

16

STATE'S ATTORNEY: Q. What did the defendant say to you at that time and what did you say to him?

A. I asked Mr. Hubbard what was the circumstances of his arrest, and he told me that he had gotten into some trouble at a house on Peoria Street with some woman in the house and that he had had relationships with two of the women in the house.

THE COURT: The jury is instructed to disregard the last statement of the witness. That is stricken from the record.

THE WITNESS: Relative to . . .

STATE'S ATTORNEY: (Interposing) Q. Officer, did you have a conversation with him about being on 72nd and Peoria?

A. Yes, sir.

Officer Porter then testified further concerning the events covered by the instant indictments which originated at 72nd and Peoria Streets. The other matter referred to in the above excerpt of his testimony took place near that location and involved two other rapes for which he was subsequently convicted.[1]

█ Defendant contends that the reference by the witness to facts immaterial to the offenses being tried was so highly prejudicial as to be sufficient, in itself, to deny defendant's right to a fair trial. We find nothing in this testimony to have been prejudicial to that extent. We think, rather, that the reasoning in People v. Naujokas, 25 Ill2d 32, 35, 36, 182 NE2d 700, is applicable to the situation here. In Naujokas, the arresting officer was asked on direct examination "what he did with rela-

---

[1] For those crimes he was sentenced to 40 to 60 years for each offense, to run concurrently with each other and with the sentences here being reviewed. The other sentences were affirmed in People v. Hubbard, 73 Ill App2d 302, 219 NE2d 639.

17

tion to the defendant after the line-up?" The response included reference to a conversation between the witness and the accused concerning facts pertinent to another offense. The court observed:

> It is apparent that the quoted testimony . . . was incompetent and irrelevant. However, . . . the answer was not responsive and was not adduced by the question by the State's Attorney . . . . In addition the prompt action of the court in interrupting the testimony, striking the answer, and admonishing the jury served to cure any possible error. In view of the fact of the court's prompt action and the fact that the testimony was not adduced by action of the State, we feel that the court was not in error in denying the motions for a mistrial. (Citing cases.)

The record in the instant case indicates that Officer Porter had two different conversations with defendant, and it was the second of these conversations which related to the instant offenses, the first conversation having been the one referred to in the questioned testimony. Defendant's brief suggests that "Officer Porter was confusing the facts involved in another indictment with the indictments being tried in this case," and we are inclined to agree with this analysis. There is nothing to indicate that the State's Attorney consciously intended to elicit incompetent or prejudicial testimony from the witness. On the contrary, the record demonstrates not only prompt admonishment by the court to the jury to disregard such testimony, but also immediate action by the State's Attorney to propound a more specific question designed to remove the confusion from the mind of the witness. It might also be noted that the testimony in question did not expressly refer to other criminal offenses, but, without further proof, could be said to describe only immoral behavior on the part of defendant.

In the light of the foregoing we do not find anything in this point which requires reversal.

(3)  Before considering defendant's contention that he was deprived of his right to counsel, we must review some of the trial events which preceded presentation of the State's case.  Prior to the calling of prospective jurors, defendant advised the court that he did not wish to be defended by his attorney of record, Marshall Schwarzbach, who had been appointed by the court.  The judge reminded defendant that he had previously objected to being represented by Thomas Kelly, a public defender, and that the result of rejecting Mr. Schwarzbach as counsel would be that he would once again be represented by Mr. Kelly.  Defendant protested that he had a basic disagreement with both counsel as to the way in which his case should be handled, and further announced that he objected to going to trial because "I haven't got competent counsel."  The judge then stated for the record that he was aware of Mr. Schwarzbach's qualifications and experience in the trial of previous cases before the court and considered him to be competent.  At this point, Mr. Schwarzbach requested leave of the court to withdraw as counsel for defendant.  This request, however, was denied.

The prospective jurors were then called, but their questioning had scarcely begun when the trial judge, Mr. Schwarzbach, Mr. Kelly and the defendant withdrew to chambers.  Again being informed by defendant that he wished neither Mr. Schwarzbach nor Mr. Kelly to represent him, the trial judge advised the defendant of his rights as follows:

> Now, I want to advise you what I think is in your own best interests, that you are under the law entitled to be represented by counsel who is competent and able to present your defense.

19

Now, I advise you that in my opinion Mr. Schwarzbach is able to do that. However, under our system, you have the right, if you want to discharge Mr. Schwarzbach, to do so with the understanding, however, that I would then appoint Mr. Kelly, the Public Defender, that if you don't want him, I will discharge him because you have the right to discharge these lawyers if you don't want them to represent you, but you will then be compelled to defend yourself, which I think you are undoubtedly not able to do.

At the same time, you have the right to discharge these lawyers if you want to do so because you are the one on trial and if you want to fire them, you have the right to fire them.

The following colloquy then took place between defendant and the trial judge:

The Defendant:   I strictly don't want either one of them.

The Court:   Do you want Mr. Kelly to sit in the courtroom and advise you during the course of the trial?

The Defendant:   Judge, Your Honor, personally, I don't really have any choice about any of it so it doesn't matter whether he sits with me or not because I am not going to do anything but sit there, because if I have no lawyer, how am I going to court?

The Court:   Well, you can suit yourself.

The Defendant:   Yes, sir.

The Court:   Mr. Kelly, I would ask that you sit there and advise the defendant. If he chooses to accept your advice or reject it, it is up to him. Mr. Schwarzbach, you will be permitted to withdraw.

Proceedings in the courtroom were then resumed and the jury was impaneled and sworn. The court asked defend-

ant if he wished to make any opening statement. Defendant reiterated: "I object to going to trial today because I haven't got competent counsel to represent me." The court then observed for the record that defendant did not wish to make an opening statement, and directed the prosecution to call its first witness.

Despite defendant's argument to the contrary, we are not confronted here with the obligation of the State to appoint counsel for an indigent under the mandate of Gideon v. Wainwright, 372 US 335. Nor is there any question that the trial court properly informed defendant of his right to be represented by counsel. In fact, defendant concedes that he was given an understandable instruction that he had the right to choose either Mr. Kelly or Mr. Schwarzbach to defend him in court, and that he also had the right to proceed as his own attorney. The gist of defendant's claim of error is that the court failed to set before him starkly the consequences of refusing both alternatives. Defendant, relying on Johnson v. Zerbst, 304 US 458, 464, points out that because of this failure by the court, he never intelligently and understandingly made a clear-cut statement that he elected to waive counsel and defend himself. It is suggested by defendant that the following statement by the court would have avoided the alleged error in the record and squarely put defendant to a specific election: "Mr. Hubbard, do you wish to represent yourself or do you wish to be represented by Mr. Schwarzbach or Mr. Kelly?"

In support of his contention, defendant refers us to United States v. Curtiss, 330 F2d 278 (2nd Cir 1964). The record showed Curtiss' disinclination to be represented by court-appointed counsel, but failed to show a desire on the part of Curtiss to represent himself. The court stated:

> Curtiss' statements indicate that while he was unhappy about his relationship with Mr. Kaplan, he

21

certainly had no wish to try the case himself but felt that "he had no choice." Of course the judge need not have appointed other counsel besides Mr. Kaplan unless Curtiss showed good cause, . . . but it was erroneous to require him to try his own case without a clear-cut statement that he intelligently wished to do so.

Defendant argues that the statements of the Curtiss court must be construed to mean that there is a failure to protect his constitutional rights if defendant is permitted to proceed pro se without having knowingly expressed his desire to represent himself. If this is the correct interpretation of the Curtiss decision (there were other grounds for reversal [2]), then we must reject it, despite the persuasiveness of opinions customarily originating in that court.

■ ■ Defendant says that there were, under the Curtiss case, only two alternatives available to defendant in this case: (1) acceptance of one or the other of the court-appointed counsel (thus conceding that the trial court was not required to appoint a third attorney), or (2) an affirmative decision to waive counsel and to defend himself. In advocating these as the only alternatives, defendant also expressly concedes that a defendant may not use his right to counsel as a device to delay trial (United States ex rel. Allen v. Rundle, 233 F Supp 633 (ED Pa, 1964)), and he may waive his right to act for himself (People v. Ephraim, 411 Ill 118, 103 NE2d 363).

---

[2] The decision was not unanimous, Judge Medina dissenting. The majority seemed not to be strongly convinced of its conclusion on the waiver point. It said at pages 280, 281:

> *Even if some doubt exists* on the question whether defendant effectively waived his right to counsel, the judgment must be reversed because of improper statements made during the government's summation, which take on special significance where, as here, the defendant has acted as his own attorney. (Emphasis supplied.)

22

Defendant then says that the two alternatives were not effectively presented to him, with the result that he never intelligently decided to waive counsel and defend himself. We cannot agree with this conclusion. We believe it fails to consider a third alternative which precisely fits the facts of this case, namely, that if a defendant knowingly rejects properly appointed counsel, he will then be required to defend himself despite protestations that he does not wish to do so. That the trial court in the instant case made this third proposition clear to defendant we have no doubt. That being true, defendant was then obliged to proceed pro se if the trial were not to be indefinitely suspended, a result which could not be countenanced; his right to counsel "may not be employed as a weapon to thwart the administration of justice." People v. Mitchell, 33 Ill2d 603, 605, 213 NE2d 514.

In our opinion the record clearly indicates a conscious, intelligent choice on the part of defendant to proceed with his own defense. When the court told him that if he persisted in his rejection of representation by both Mr. Schwarzbach and Mr. Kelly he would be "compelled" to defend himself, the compulsion referred to was not one imposed upon defendant by the court, but rather was it the inevitable consequence of defendant's will not to accept the competent legal services which had been made available to him.

Additional light is shed on defendant's intentions by another colloquy with the court:

> The Court: Well, you get, you are entitled to be represented by a lawyer who is competent and able to defend you.
>
> Now, that doesn't mean we go through lawyers until you get one that you personally like. You are entitled to a lawyer qualified to handle your case for you. You have had two of them. I am telling you, you can have your choice, either one of the

23

two you want but I can't keep appointing lawyers until I find one that satisfies you.

The Defendant: It is not that so much, just that these lawyers don't—I don't know whether they are competent or not. It doesn't seem to me they are competent the way they present themselves to me.

The trial judge then expressly stated that in his opinion Mr. Schwarzbach was competent to represent defendant. We join in that opinion. As a matter of fact, defendant's brief makes it clear that the competence of Schwarzbach and Kelly is not in issue on this appeal. Defendant's statements as to their incompetency are presented here merely as a part of his expression of desire for counsel.

Pertinently, it was held in People v. Musinski, 22 Ill2d 518, 520, 177 NE2d 142, that:

Neither the constitution nor statutes give the defendant the legal right to demand the court appoint new counsel whenever defendant conceives some disagreement with counsel's "tactics."

For a further, rather full, discussion of this phase of defendant's contention see People v. Gray, 33 Ill2d 349, 353–355, 211 NE2d 369, and the cases therein cited.

In conclusion, we believe that the trial court made a more-than-adequate explanation to defendant of his right to counsel as it existed before the start of this trial. The results which followed defendant's decision in that regard were clearly foreseeable, but if not foreseen by him, became immediately apparent when the trial began. We find no error or basis for reversal.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and McCORMICK, J., concur.