THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH EICHELBERGER, Defendant-Appellant.

First District (3rd Division)    No. 79-93

Opinion filed February 27, 1980.

Eva Schwattzman and Ellis B. Rosenzweig, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Alphonse R. Tomaso, Assistant State's Attorneys, of counsel), for the People.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

Kenneth Eichelberger, the defendant, was charged by complaint with the offense of battery. (Ill. Rev. Stat. 1977, ch. 38, par. 12—3.) After a bench trial, he was found guilty and sentenced to one year court supervision. The defendant appeals from this conviction, contending that he was not proved guilty beyond a reasonable doubt and that the trial court improperly refused to consider the defense of self-defense.

Kenneth Eichelberger was the foster father of Justin (Eddie) Hodge since May 1974. Justin disappeared on January 18, 1978, and a juvenile warrant was issued. On March 31, 1978, the day of the alleged battery, the defendant and his wife attended a juvenile court hearing. After the hearing, the Eichelbergers drove to the area of 1800 North Kildare where Justin's uncle lived. The defendant saw Justin playing with several children and attempted to take Justin. An altercation arose between the defendant and Charles Prather, Jr., Justin's 14-year-old cousin. On May 17, 1978, Suzzanne Prather, Charles' mother, signed a misdemeanor complaint for battery against the defendant based on this occurrence.

Charles Prather, Jr., testified that he was watching a group of younger children for his mother at about 11 or 12 o'clock on March 31, 1978, near his home. He testified that the defendant walked up to his cousin, Justin, and said, "Hi, Eddie [Justin]. Do you want to come home with me?" Justin responded, "Well, I don't know." Prather said the defendant said, "Come on, Eddie. You can come home with us"; and Justin answered, "Well, all right." The defendant then grabbed Justin under his arm and started to walk away. Prather said he took hold of Justin and the defendant started pulling Justin. He then let go of Justin and seized the defendant by the arm to prevent him from getting away. Prather further testified that the defendant also grabbed his eight-year-old sister and that the defendant started kicking him in the shins while holding on to both children. The defendant let Prather's sister go and attempted to break Prather's grip by shoving his arm against Prather's throat. When Prather told his sister to get their father, Eichelberger punched him in the

face. Then the defendant let go of Justin and left the area. Prather said he was bleeding and was taken to the hospital and treated for a broken nose. Prather testified that Eichelberger never identified himself.

On cross-examination, Prather denied that Justin jumped into the defendant's arms. He also denied pulling Justin's arms but admitted pulling on the defendant. Prather said he was not taken to the hospital until about 5 or 6 o'clock on March 31, 1978.

Anna Fugate, a neighbor of the Prathers, also testified for the prosecution. She stated that she was standing across the street when she observed the defendant pick up a five-year-old child and start running with him. She observed Prather grab the defendant's jacket and said the defendant turned around and hit Prather in the face. Fugate testified that she did not see Prather strike the defendant. She said Prather just grabbed the defendant and "tried to get the kid away from him."

On cross-examination, Fugate said she did not know whether Justin had his arms around the defendant's neck nor could she tell whether the child took the defendant's hand. She also did not know if there were any more children around at the time of the incident besides Prather, his sister and Justin and whether Prather pulled on the defendant's arm.

Kenneth Eichelberger testified on his own behalf. He stated that he and his wife were driving in the 1800 block of Kildare Avenue when they observed four or five children playing. He said he drove around the corner, parked his car and walked back to the location to see if one of the children was Justin. He said his foster son recognized him and said, "Dad." The defendant then asked the child, "Eddie, do you want to come home with me?" The child said, "Yes" and ran to the defendant and the defendant picked him up. The defendant testified that Justin's arms were around his neck and that Charles Prather, Jr., said, "No" and grabbed Justin's arm with both his hands. The defendant described the struggle that ensued as follows:

> "Well, he was pulling at Eddie and I was pulling at Eddie trying to defend what was my responsibility to care for him and defending myself. This boy was shoving and pulling, and we were naturally turning around, tussling and that, trying to get—he was trying to get him loose from me and I was trying to get him loose from him."

According to the defendant, Prather then told his sister to get their father. The defendant said he then placed Justin on the ground, said he was going to call the police and ran back to his car to drive to a gas station to make the call.

On cross-examination, the defendant conceded that he did not at any time identify himself to Charles Prather, Jr.; that he had been instructed by the police to call them when he located Justin; and that he did not telephone the police first as he was instructed to do. He said he never

touched Prather except on his hand where Prather was pulling on Justin's arm.

Police Officer Kaczor was called as a defense witness and testified that he responded to defendant's telephone call and went with him to the Prathers' home. He said that he did not notice whether Charles Prather, Jr.'s nose was bleeding nor did Prather mention a nosebleed or injury. On cross-examination, Officer Kaczor said that when he arrived at the Prathers' home at approximately 12 or 12:30 p.m., he asked Prather whether he had been injured and Prather answered he had been pushed or shoved, but he did not mention that he had been injured.

Charles Prather, Jr., testified in rebuttal that his nose was not bleeding at the time Officer Kaczor arrived but that it was "real sore."

■■ On appeal the defendant initially contends that he was not proved guilty beyond a reasonable doubt. In a bench trial in a criminal case, it is for the trial court to hear the testimony and determine the credibility of the witnesses. Where the truth lies is a matter peculiarly for the trier of fact and it is not for a reviewing court to substitute its opinion therefor. (*People v. McNair* (1979), 71 Ill. App. 3d 782, 390 N.E.2d 142.) A reviewing court will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to the defendant's guilt (*People v. Charleston* (1970), 47 Ill. 2d 19, 264 N.E.2d 199; *People v. Crenshaw* (1959), 15 Ill. 2d 458, 155 N.E.2d 599, *cert. denied* (1959), 359 U.S. 997, 3 L. Ed. 2d 985, 79 S. Ct. 1133) or where the evidence of the prosecution is improbable, unconvincing or contrary to human experience. *People v. Poltrock* (1974), 18 Ill. App. 3d 847, 310 N.E.2d 770.

■■ Reviewing the record, we find that the testimony of Charles Prather, Jr., was so implausible and contrary to human experience as to cast reasonable doubt of defendant's guilt. We are not convinced that Prather sustained a broken nose or facial injury. Although Prather testified at trial that his nose had been bleeding and was "real sore," the injury was not apparent to the police officer who arrived on the scene shortly after the incident. It is equally implausible that, having sustained a broken nose, Prather was not taken to the hospital to have his nose examined until five or six hours after the incident. We also find it doubtful that Prather was punched in the face since, when questioned by the police officer, he merely stated that he had been pushed or shoved. The fact that the complaint for battery was not signed until May 17, 1978, approximately 1½ months after the incident also casts grave doubt upon Prather's credibility. See *People v. Poltrock.*

In addition, we find that the testimony of Anna Fugate was not reliable since she viewed the incident from a distance and was unable to give a complete account of the altercation. Furthermore, her testimony

that the defendant picked up Justin and began to run with him was contradicted by the defendant and Prather.

We find that the State did not meet its burden of establishing the defendant's guilt beyond a reasonable doubt and hold that the defendant's conviction must be reversed.

In view of this conclusion, we find it unnecessary to address defendant's self-defense argument.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

SIMON and RIZZI, JJ., concur.