THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY KOSYLA, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY KOSYLA, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOYCE KOSYLA, Defendant-Appellant.

Second District   Nos. 2—84—0726, 2—85—0181 and 2—85—0182 cons.

Opinion filed April 29, 1986.—Modified on denial of rehearing June 23, 1986.

SCHNAKE, J., specially concurring.
REINHARD, J., dissenting in part.

Paul S. Chervin and Linda E. Spring, both of Wildman, Harrold, Allen & Dixon, of Waukegan, and G. Joseph Weller, Jan K. Dargel, and Michael F. Braun, all of State Appellate Defender's Office, of Elgin, for appellant Stanley Kosyla.

Linda E. Spring, of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellant Joyce Kosyla.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, Phyllis J. Perko, and Andrea Becker, all of State's Attorneys Appellate Service Commission, and Frank Weiss, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:
The defendants, Stanley Kosyla and Joyce Kosyla, his wife, were

convicted in three misdemeanor cases in the circuit court of Lake County.

Cause No. 2—84—0726 is an appeal by Stanley Kosyla from his conviction on five counts of battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—3(a)(1)). He was sentenced to serve one year of conditional discharge and to perform 150 hours of public service.

These convictions arose out of an altercation between the defendant and a neighbor, Mrs. Frederica Potts, and four of her children. The defendant grabbed Mrs. Potts, struck her on the chin, pushed her to the ground, bruising and injuring her. He threw several handsful of rocks at Mrs. Potts and at three of her children. As a result, 16-year-old Phillip was hit with rocks on his chest and legs; eight-year-old Michelle was hit on her arm; and 12-year-old John was hit in the back. All three were hurt and bruised. The defendant punched 17-year-old Maria in both eyes so hard that he caused her to fall to the ground and to temporarily lose her vision.

Cause No. 2—85—0182 is an appeal by Joyce Kosyla from her conviction of disorderly conduct (Ill. Rev. Stat. 1983, ch. 38, par. 26—1(a)(1)). She was sentenced to serve one year of conditional discharge and as a condition to attend Northern Illinois Correctional Training Institute and to pay a fine of $200 plus court costs.

This conviction arose out of an incident occurring on August 27, 1983. A neighbor, Mrs. Frederica Potts, was hosting a backyard wedding for her daughter. Mrs. Potts testified she heard Stanley Kosyla shouting obscenities at the wedding party, and she heard Joyce Kosyla instruct her son to turn the volume up on a stereo located in the Kosyla garage, which noise disturbed the wedding. The police were called to the Kosylas' garage, and they told the son to turn the volume of the stereo down, which he did. Joyce Kosyla then instructed her son to turn up the volume of the stereo "so that he [Sean] wouldn't have to listen to their [Potts] name calling." Joyce Kosyla was then arrested for disorderly conduct.

Cause No. 2—85—0181 is an appeal by Stanley Kosyla from his conviction for resisting a peace officer (Ill. Rev. Stat. 1983, ch. 38, par. 31—1), and escape (Ill. Rev. Stat. 1983, ch. 38, par. 31—6(c)). He was sentenced to serve one-year probation, the first six months of which was to be served confined in the Lake County jail.

This conviction arose out of the same series of events out of which Joyce Kosyla's conviction arose. A police officer testified that after Joyce Kosyla's arrest, Stanley Kosyla came out of his house and asked what was going on. When the defendant learned that the police officer was concerned about the music emanating from the Kosyla ga-

rage, he informed the officer that he would turn the music up all the way. Defendant then increased the music sound level and the police officer said, "Hold it, Stanley, don't do that. You are disturbing the neighbors." In reply to this warning, the defendant asked, "What are you going to do, arrest me?" The police officer answered, "Yes, I will. You are under arrest right now." Stanley Kosyla informed the officer he was going to call his lawyer and went into the house. He reappeared momentarily to shout an obscenity at the officers and was then seen entering a cornfield behind his home. He was not apprehended that day.

Stanley Kosyla raises these issues: (1) whether the court erred in proceeding to trial without providing him with the assistance of counsel; (2) whether his conviction of escaping from a peace officer must be reversed where the State did not prove an essential element of the offense, namely, that he was ever in the custody of the arresting officer; (3) whether the trial court erred in failing to order a transcript before requiring newly appointed counsel to prepare a motion for a new trial; and (4) whether the State proved him guilty of five counts of battery beyond a reasonable doubt.

Joyce Kosyla joins in the first issue raised.

The proceedings for Stanley and Joyce Kosyla were conducted jointly. The Kosylas initially retained private counsel, Judith Halprin, but moved for her appointment by the court because of their financial condition; their house had burned down, the State had brought multiple criminal actions against the Kosyla family, and Lake County officials were allegedly prejudiced against them, including the public defender's office. The motion was denied.

Stanley Kosyla next sought to enter a "plea of despair" and plead guilty to these and other unrelated charges while maintaining his innocence. Attorney Halprin argued that no other avenue was available to Stanley Kosyla as he was unable to afford private counsel for trial, nor would he accept appointment of the public defender. The guilty plea was refused.

Attorney Halprin was given leave to withdraw as attorney for the Kosylas because of the hardship of continuing to represent them without compensation. The trial court then inquired whether the Kosylas planned to hire other counsel, and they replied that they were without funds to do so. Stanley Kosyla told the court that they were not requesting appointment of the public defender, and that they were not going to represent themselves. The Kosylas read a letter to the court:

> "The Court has already refused to grant us appointed counsel. Although we do not wish *** to be unrepresented, we have

no choice—but we have no choice. We understand that with or without a lawyer it is this Court's duty to see to it that we receive fair jury trials. We look to the Court to fulfill its duty to us as we are forced to trial without representation."

After the Kosylas indicated that they had evidence of prejudice towards them by the public defender's office, Judge Singer heard and denied their motion for appointment of private counsel. The court then cautioned them against self-representation, but the Kosylas answered that they were not asking to represent themselves and would not do so. The following colloquy took place:

"THE COURT: If you don't want the Public Defendant [*sic*] appointed to represent you, I won't appoint them to represent you.

But I've heard nothing to justify the court in appointing anyone else.

MRS. KOSYLA: Then, your Honor, if we can continue to Court unrepresented, we will have to stand moot [*sic*] and I will have to put myself and my husband in the hands of the Court to see we get justice.

\* \* \*

THE COURT: Now, I have to caution you about the difficulties involved. You've been in the courtroom enough, I think, to know—

MRS. KOSYLA: I understand that, your Honor.

THE COURT: (Continuing)—that it's difficult to try cases. I urge you that you be represented. And I think that you should be well-aware of the difficulties involved of trying the cases, of witnesses testifying and asking yourselves questions on the stand, because the rules of procedure are strict.

The problems in jury selection, preparation of arguments to the Jury, preparation of Jury instructions and these are done in properly conducting a trial.

MRS. KOSYLA: We are not going to defend ourselves or waive any of our rights. And the only thing we can do at this point, your Honor, is put ourselves in the hands of the Court to see to it that we get a fair and just trial.

\* \* \*

THE COURT: If you don't want the Public Defender's Office to represent you, that is entirely up to you. All I'm advising you is there's great difficulty—it has been done and has been done successfully, you might say, but it is very difficult for an unrepresented Defendant in a criminal case to represent

themselves.

MRS. KOSYLA: I'm not asking to represent myself, your Honor. I'm stating that we would have to stand moot [*sic*] because there's no way we can have ourselves represented ***."

In a second hearing on the motion for appointment of private counsel, the court again found no prejudice, and appointed the public defender over defendant's objections. The following colloquy took place:

"MR. KOSYLA: I cannot be forced into a relationship with someone I do not know and I do not trust, and I will have to go to trial and stand mute.

THE COURT: The Court will not allow you to do that.

MR. KOSYLA: Are you going to force me to take a public defender? Is that what you are telling me?

THE COURT: I will appoint the public defender to represent you.

MR. KOSYLA: Against my will?

THE COURT: Against your will."

The court informed Stanley Kosyla that the only way he could refuse the public defender was to knowingly refuse to be represented by an attorney.

When defendant continued to refuse representation by a public defender, the trial court ordered the cases to proceed to trial with or without counsel for defendant.

On April 25, 1984, defendant appeared without counsel. Following the State's opening statement, defendant neither agreed nor refused to make an opening statement and told the court: "I have placed myself in your hands. I am placing myself in your hands, which we had agreed to previously. I am unrepresented. I do not have an attorney. I am placing myself in your hands."

The court denied any previous understandings or agreements, explained that it would see that the defendant received a fair trial, but stated that it would not represent defendant.

The State then presented its battery case against Stanley Kosyla. The defendant conducted no cross-examination of any witness and presented no witnesses of his own. The trial court asked defendant after each witness whether he wished to cross-examine, but defendant conducted no cross-examinations. Defendant did not make a closing argument. Defendant offered no jury instructions and made no comments or objections to the instructions offered by the State. The jury returned a verdict of guilty on all five counts.

The trial court conducted a further hearing on defendant's re-

quest for appointment of private counsel. Defendant's wife was permitted to examine Randall Graff, a public defender, as to his possible prejudice. He testified that he communicated regularly with the State's Attorney's office. He regularly plea bargained with the State's Attorney's office. His office cooperated with the State's Attorney's office.

At the defendant's next court date, Michael Melius, Lake County public defender, appeared. Mr. Kosyla renewed his disagreement with representation by the public defender's office but was told by the court that the public defender would be his attorney since he had not waived his right to counsel. The court stated that Kosylas' refusal of the public defender was not effective for any purpose. Judge Witt reviewed the transcripts of the hearing conducted by Judge Singer, and he reconsidered the Kosylas' request for private counsel. Judge Witt found no prejudice by the public defender's office toward them, and offered to reappoint the public defender. After the Kosylas declined, the State asked the court whether it was "making a finding that although not in words the defendants have made a knowing waiver of their representation by counsel by their refusal." The court responded, "No, that is not fair. Obviously they are not giving up their right to counsel. I would like to make that finding but cannot."

The Kosylas were tried jointly by a jury and neither was represented by counsel. They neither examined any prospective jurors nor exercised any challenges, stating that "[w]e are not representing ourselves." Stanley Kosyla told the court that it should inform the jurors that he and his wife were not representing themselves and would be standing mute.

The Kosylas declined to cross-examine any of the four witnesses who testified for the State, nor did they present closing arguments to the jury or participate in selection of jury instructions. The jury found both defendants guilty, and they were subsequently sentenced.

■■ The defendants initially argue that they did not waive their right to an appointed attorney. They contend that they were entitled to the appointment of private counsel because they made a showing of good cause. They also argue that even though they rejected the services of the public defender, the trial court should have required the public defender to appear with them as stand-by counsel in case of need during the trials.

The State contends that a question of waiver of counsel is not present in this case. Rather, the State argues, the issue is whether the court erred in proceeding to trial where the defendants refused the assistance of the appointed public defender and concurrently and

repeatedly declined to undertake their own representation. The State argues that the defendants' refusal to accept the assistance of counsel appointed by the trial court, in conjunction with their declination to undertake their own representation, amounted to an attempt to thwart the administration of justice and the effective prosecution of crime. The State also contends that the defendants did not make any showing of good cause for the appointment of private counsel. The State also argues that in the two cases where the defendants were not sentenced to imprisonment they had no constitutional right to counsel and the provisions of Supreme Court Rule 401(a) (103 Ill. 2d R. 401(a)) were inapplicable to them.

Although the defendants premise their argument on a Federal and State constitutional right to counsel (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8), it is clear that where, as here, in Cause Nos. 2—84—0726 and 2—85—0182, the defendants were not sentenced to imprisonment, an indigent defendant has no constitutional right to court-appointed counsel. (*Scott v. Illinois* (1979), 440 U.S. 367, 373-74, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162; *People v. Morgese* (1981), 94 Ill. App. 3d 638, 640-41.) Accordingly, in those two cases, the defendants' right to court-appointed counsel obtains, if at all, on statutory grounds.

Illinois provides by statute for the appointment of counsel. In pertinent part, section 113—3(b) of the Code of Criminal Procedure of 1963 provides:

"In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. If there is no Public Defender in the county or if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the Public Defender, the court shall appoint as counsel a licensed attorney at law of this State ***." (Ill. Rev. Stat. 1983, ch. 38, par. 113—3(b).)

That section has been interpreted as entitling an indigent criminal defendant to court-appointed counsel in all cases except where the penalty imposed is a fine only and, concomitantly, as precluding the trial court from imposing a penalty other than a fine on an indigent criminal defendant unless he has been afforded the right to appointed counsel or has waived that right. (*People v. Morgese* (1981), 94 Ill. App. 3d 638, 642.) Since Stanley Kosyla in cause No. 2—84—0726 was sentenced to one year conditional discharge and to perform 150 hours of public service, and Joyce Kosyla in cause No. 2—85—0812 was sen-

tenced to one year conditional discharge and required to attend the Northern Illinois Correctional Training Institute and to pay a fine of $200, both defendants were statutorily entitled to court-appointed counsel, unless they waived that right.

In cause No. 2—85—0181, Stanley Kosyla's one-year sentence of probation included six months in the Lake County jail. As such, he had a constitutional, as well as a statutory, right to counsel (*People v. Morgese* (1981), 94 Ill. App. 3d 638; Ill. Rev. Stat. 1983, ch. 38, par. 113—3(b)), and, in the absence of strict compliance with the admonishments required to be given under Supreme Court Rule 401(a) (*People v. Smith* (1985), 133 Ill. App. 3d 574, 579; *People v. Montoya* (1981), 94 Ill. App. 3d 6), this court cannot conclude there was an effective waiver of counsel. When a defendant refuses his appointed counsel and declines self-representation as well, Supreme Court Rule 401(a) provides a mechanism for the trial court: if the court gives the statutory admonishments, a waiver, in effect results. See *People v. Roofener* (1981), 95 Ill. App. 3d 342; *People v. Brown* (1980), 80 Ill. App. 3d 616.

Supreme Court Rule 401(a) provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." (103 Ill. 2d R. 401(a).)

The absence here of admonishments required by Supreme Court Rule 401(a) was error. (*People v. Baker* (1983), 94 Ill. 2d 129, 136.) We reject the State's argument that *People v. Myles* (1981), 86 Ill. 2d 260, is analogous and should be deemed dispositive in order to reach the conclusion that Supreme Court Rule 401(a) admonishments were not required to be given where the defendant declined to undertake his own representation. Although the State acknowledges that the instant cause and *Myles* differ "in that the trial court in *Myles* had required the Public Defender to remain in the courtroom for the possibility of advising defendant," it refuses to acknowledge the import of that dis-

tinguishing factor. The supreme court's later opinion in *People v. Baker* (1983), 94 Ill. 2d 129, supports our conclusion here that the distinguishing factor in *Myles* presents a distinction *with* a difference and warrants a different result here.

In *Baker*, the public defender was appointed to represent the defendant at a hearing on a petition to revoke his probation. Prior to the hearing, the defendant requested the public defender be discharged, and that a continuance be granted to permit him to be represented by another attorney who had agreed to take the case. The State objected to the continuance, and the court denied the motion to discharge the public defender. The defendant objected to the public defender's continued representation. The court explained that if it discharged the public defender and also denied the request for a continuance, the defendant would, in effect, be representing himself. The defendant stated he understood this, counsel was discharged, and a continuance denied. The State proceeded with its case; defendant did not cross-examine witnesses or present his own evidence. His further motions for a continuance to secure counsel were denied, and he was found guilty of violating his probation.

On appeal, the court found the record showed the defendant had not been admonished in accordance with Supreme Court Rule 401(a) and that no effective waiver of counsel had occurred. The *Baker* court rejected the argument of the State there that *People v. Myles* (1981), 86 Ill. 2d 260, supported its contention that Supreme Court Rule 401(a) admonishments at the probation-revocation hearing were unnecessary. The *Baker* court stated:

> "The State has misread *Myles*; the circumstances of *Myles* are not at all analogous to the situation here. *Admonitions were not necessary in Myles because the defendant continued to be represented by counsel.* \*\*\* In finding that the failure to give Rule 401(a) admonitions was not in error, the [*Myles*] court said: 'Here defendant clearly and repeatedly declined to undertake his own representation. Thus, Rule 401(a) was inapplicable. Defendant's refusal to heed the advice or employ the services of [his] appointed counsel did not necessitate that the circuit court admonish defendant in accordance with Rule 401(a).' (86 Ill. 2d 260, 269.) However, this court also made it clear that had the defendant in *Myles* waived counsel entirely and elected to represent himself, admonishments would have been required.

In the case at bar, the defendant renounced counsel. The public defender was discharged and the defendant proceeded with-

out counsel. Admonishments should have been given." (Emphasis added.) *(People v. Baker* (1983), 94 Ill. 2d 129, 135-36.)
"[W]here a defendant proceeds to trial with the 'technical assistance' of an attorney, he has not waived counsel. In such a situation, the defendant need not be given the full admonishments of Supreme Court Rule 401(a)." *People v. Smith* (1985), 133 Ill. App. 3d 574, 579.

■ In the instant cause, the defendant declined to undertake his own representation and asserted his desire to be represented by appointed counsel other than the public defender whom he alleged was prejudiced against him. Admonishments in strict compliance with Supreme Court Rule 401(a) were not given, and the defendant proceeded to trial without the actual or "technical assistance" of an attorney, and without having elected to proceed *pro se.* Had the court given the admonitions required by Rule 401(a), and the defendant continued to reject representation by the public defender, his rejection of counsel would at least have been a *knowing* one, and he would then have been required to defend himself despite protestations that he did not wish to do so. *(People v. Brown* (1980), 80 Ill. App. 3d 616, 626; *People v. Hubbard* (1966), 77 Ill. App. 2d 14, 23.) The State's assertion that *People v. Brown* was impliedly overruled by *People v. Myles* is not well taken in view of the subsequent construction of *Myles* in *Baker.*

As the court noted in *People v. Brown* (1980), 80 Ill. App. 3d 616, when an indigent defendant continues to insist on the appointment of counsel other than a public defender, but is unable to show good cause or prejudice for such an appointment, forcing the defendant to trial without any attorney amounts to, in practical effect, a waiver of the right to be represented by counsel. 80 Ill. App. 3d 616, 621.

"The trial court can force a defendant to choose either representation by the public defender or self-representation. *(People v. Roofener* (1981), 95 Ill. App. 3d 342, 420 N.E.2d 189; *Brown.)* Before the court allows defendant to represent himself, however, the court must strictly comply with Rule 401(a). The rule provides simple, minimum guidelines for advising defendant of the right to counsel and the implications of the trial before him. *(People v. Brown* (1980), 80 Ill. App. 3d 616, 622, 399 N.E.2d 1374, 1378.)" *People v. Johnson* (1984), 123 Ill. App. 3d 128, 131.

The State's suggestion that the court substantially complied with Supreme Court Rule 401(a), even if true, clearly would not excuse the error, since the weight of authority is that strict, not substantial, compliance with the rule is required. See, *e.g., People v. Smith* (1985), 133 Ill. App. 3d 574, 579; *People v. Johnson* (1984), 123 Ill. App. 3d 128,

131; *People v. Montoya* (1981), 94 Ill. App. 3d 6.

In causes 2—84—0726 and 2—85—0182, the State asserts that both defendants repeated refusal of the appointment of the public defender's office amounted to a conscious, deliberate, knowing and intelligent waiver of their right to counsel. It has been stated, however, that "[a] waiver of counsel occurs when a defendant *** informs a court that he does not wish counsel; that he wants to stand alone." (*People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140.) "[T]he rejection of legal representation must be unequivocal." *People v. Voight* (1977), 52 Ill. App. 3d 832, 838.

In determining whether there was a valid waiver of the right to counsel, the appellate court must consider the words and conduct of the defendants and indulge in every reasonable presumption against waiver. *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44.

Based on this record, we find no waiver of counsel occurred.

The defendants here repeatedly stated that they did not wish to be unrepresented during trial, although they felt that they could not accept the public defender as their appointed counsel since it was their belief that all Lake County officials, including the public defender, were prejudiced against them.

We agree that the evidence presented by the defendants was insufficient to show that the appointment of the public defender would have been prejudicial to their rights, and that the court did not err by not appointing private counsel. Nevertheless, the evidence presented reasonably allows the inference the defendants were sincere in their subjective belief that Lake County officials were prejudiced against them and that the public defender's unavoidable cooperative working relationship with the State's Attorney would operate, ultimately, to their prejudice. The record shows the court found the defendants to be indigent, that they affirmatively desired counsel, and that they did not wish to represent themselves. Thus, the requirements of section 113—3 of the Code of Criminal Procedure of 1963 were thereby triggered. (*People v. Sebag* (1982), 110 Ill. App. 3d 821, 826.) When the court found the defendants' rights would not be prejudiced by the appointment of the public defender, it should have appointed the public defender to represent them at their trial.

For the reasons discussed above, we conclude error occurred when Stanley Kosyla proceeded to trial in cause No. 2—85—0181 without the assistance of counsel and in the absence of admonitions according to Supreme Court Rule 401(a), and when the court failed to appoint the public defender to represent Stanley and Joyce Kosyla in cause Nos. 2—84—0726 and 2—85—0182 when it found they were in-

digent and desired counsel.

Accordingly, the causes are reversed and remanded for further proceedings.

In view of our disposition of the right to counsel issues, we proceed to address only those remaining issues which concern the sufficiency of the evidence.

### SUFFICIENCY OF THE EVIDENCE (No. 2—84—0726)

■ Stanley Kosyla contends the jury's verdict should not be allowed to stand because it was based on inherently incredible testimony given by the complaining witnesses. (*People v. Eichelberger* (1980), 81 Ill. App. 3d 1012; *People v. Smiley* (1975), 32 Ill. App. 3d 948), and on the testimony of persons who were too far from the scene to be reliable witnesses. *People v. Eichelberger* (1980), 81 Ill. App. 3d 1012.

The general rule is that the positive and credible testimony of even one witness is sufficient to sustain a conviction. (*People v. Diaz* (1981), 101 Ill. App. 3d 903.) The testimony given at trial by the five victims, two of their neighbors, and the responding officer from the Lake County sheriff's department was overwhelming, and the jury's verdict, the State argues, should be affirmed.

In brief, what occurred on July 6, 1983, was that Mrs. Potts was sitting on her front porch when the defendant's 14-year-old son, Zachary, in the street in front of the Potts' house, began calling Mrs. Potts obscene names, telling her to "get [her] son Phillip out here." She testified she said to Zachary, "Would you please go home and leave me alone?" She went into the house to check her nine-month-old baby and asked Phillip to go out and talk to Zachary, and tell him to go home. Phillip did so, and he and Zachary, who was holding onto a bike, became involved in a shoving match.

Mrs. Potts then saw the defendant proceeding down the road, yelling obscenities directed to her and her son. This testimony was corroborated by a neighbor witness, Kimberly Mochocki, whose house was located between the Potts' and the Kosylas' house. Mochocki and another neighbor, Carol Beese, who lived across and two lots down from the Potts, corroborated Mrs. Potts' testimony that the defendant picked up some stones from the Potts' driveway and threw them striking three of Mrs. Potts' children. Mrs. Potts testified she tried to break up Zachary and Phillip, saying: "Come on, Phillip. It's just what they want." The defendant then grabbed Mrs. Potts by the arms, struck her chin, and pushed her down onto the gravel driveway. He struck her daughter, Maria, with both his fists in her eyes, when

she ran out of the house, yelling to him to leave her mother alone. Maria screamed she could not see, fell down on the ground, and momentarily blacked out. When someone yelled that the police were coming, the Kosylas ran. Carol Beese and her husband helped Maria into the house, and the paramedics were called. They examined her and told her to rest. Photos of Mrs. Potts' and Maria's injuries taken the next morning by a friend were admitted in evidence.

Defendant complains testimony of several of the victims is inherently incredible because he contends their calm response was contrary to human nature under such extreme provocation from the Kosylas. Although the record does show an initially calm response, it also shows the victims were aware the defendant's behavior and that of his son was calculated to provoke angry response, one which Mrs. Potts was able to resist at first, but which eventually gave way to anger after Maria was hit in the eyes, and then she herself picked up and threw some stones at the defendant.

There were five victims here; there was a prompt complaint; there was no contradictory version of the incident testified to at trial; there was corroborating testimony from two neighbors; the testimony of all the victims was consistent; and there was objective testimony of a police officer's immediate observations of the physical manifestations of the injuries sustained by the victims. Although the neighbor witnesses were positioned some distance from the scene, there was no indication their view was obstructed, and they were able to give an account of the incident as they observed it from the beginning, with the confrontation between the two boys in the street, to the end, with Maria being punched in the eyes. The completeness of their testimony contrasts markedly from the incomplete account which was given by the witness in *People v. Eichelberger* (1980), 81 Ill. App. 3d 1012.

Further, there is nothing inherently incredible about the fact the paramedics did not take Maria to the hospital. She was not unconscious when the paramedics arrived and, after examination, was advised only to rest. Apparently, the paramedics believed the extent of her injury—two black eyes—did not require hospitalization, and, on the basis of this record, it cannot be said that assessment was incorrect.

Accordingly, we conclude the State's evidence proved the defendant guilty beyond a reasonable doubt.

SUFFICIENCY OF THE EVIDENCE (No. 2—85—0181, Stanley Kosyla)

■ The defendant contends his conviction for escape must be reversed because the State failed as a prerequisite to prove that he was

"in custody." He argues the State's evidence showed only that the officer "declared" that he was under arrest, but never completed the arrest and, thus, never attained custody over him.

The State argues the evidence more than amply supports the defendant's conviction of escape. It asserts that the issue of custody has been dealt with frequently in the context of *Miranda* warnings, and that the same test should be applied here to sustain the defendant's conviction.

In reply, the defendant acknowledges that "custody" often attaches prior to formal arrest when the issue is whether *Miranda* safeguards are constitutionally mandated. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) He argues that issue is not present here, however, and the "custody" at issue is that contemplated by the escape statute, section 31—6(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 31—6(c)). That section provides:

> "A person in the lawful custody of a peace officer who intentionally escapes from custody commits a Class A misdemeanor."

The intent of the statute, he asserts, can be ascertained by reference to other sections of the statute (*People v. Wallace* (1974), 57 Ill. 2d 285); specifically, section 102—5 and section 107—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, pars. 102—5, 107—5(a)). Section 102—5 defines "arrest" as "the taking of a person into custody." Section 107—5(a) prescribes the "method of arrest" in pertinent part: "An arrest is made by an actual restraint of the person or by his submission to custody." Defendant contends that since he was never actually restrained nor did he submit to police custody, he could not be guilty of escape.

The facts show the defendant was not "in the lawful custody of a peace officer"; consequently, his conviction for escape cannot be sustained.

The record shows the defendant came out of his house after his wife was arrested for disorderly conduct when she told her son to turn up the volume of the stereo while the Potts' wedding ceremony was taking place a short distance away. Officer Drushinin, the complainant, testified the defendant asked his wife, "What is the problem?" When he learned the officers were concerned with the volume of the stereo, he stated: "F--- them", referring to Drushinin and his partner. Drushinin testified as to the next actions of the defendant:

> "A. [Defendant] said, 'I'm turning the stereo up all the way.' He started walking toward the garage. He turned it up. I

[Drushinin] said, 'Hold it.' I said, 'Stanley, don't do that. You are disturbing the neighbors.' He said, 'What are you going to do, arrest me?' I said, 'Yes, I will. You are under arrest right now.' He said, 'I will go call my lawyer,' so he ran toward the house and went inside the house."

After Mrs. Kosyla and her son were placed in the squad car, Drushinin testified that the defendant came out of the house and said: "If you m----- f-----s want me, you come and get me." He then ran back inside the house and slammed the door. The officers watched the outside of the house, and Drushinin then called for the shift commander to come down. Drushinin then heard people at the Potts' residence yelling: "There he goes," meaning that the defendant was running out the back of his house out toward a cornfield behind his house. Drushinin's partner and five other officers from various departments gave chase, but the defendant eluded them. He was not apprehended at that time, and Drushinin later secured a warrant.

Based on these facts, the defendant was not yet "in the lawful custody of a peace officer" as that phrase is used in section 31—6(c). Mr. Kosyla's "[i]f you want me, come get me" taunt clearly evidenced his intent to evade the imposition of custody altogether, not to escape from it.

Under the facts of the case at bar, the State's evidence proved, at most, that the defendant was guilty of resisting arrest, and that his conviction for escape must be reversed on the basis he was not yet in lawful custody of a peace officer.

The judgment of the circuit court of Lake County in cause No. 2—84—0726 is reversed and remanded for the appointment of counsel; the judgment of the circuit court of Lake County in cause No. 2—85—0181 is reversed as to the defendant's conviction for escape; the cause for resisting arrest is reversed and remanded for the appointment of counsel; the judgment of the circuit court of Lake County in cause No. 2—85—0182 is reversed and remanded for the appointment of counsel.

No. 2—84—0726: Reversed and remanded.

No. 2—85—0181: Reversed in part; reversed and remanded in part.

No. 2—85—0182: Reversed and remanded.

JUSTICE SCHNAKE, specially concurring:

I agree that by the weight of authority we are compelled to arrive at the decisions delineated by Justice Unverzagt. By this concurrence

I wish only to call attention to these cases as representing perhaps the ultimate absurdity of protecting defendants who do not want to be protected and whose obvious chief aim is to make a mockery of and defy our eminently sound system of administering criminal justice.

JUSTICE REINHARD, concurring in part and dissenting in part:

While I will not attempt to summarize the lengthy pretrial proceedings below relating to defendants' right to counsel argument, in substance, both defendants steadfastly refused the appointment of the public defender. They insisted on going to trial and standing mute, against the warnings of the trial court, if their demand for counsel other than the public defender was not complied with, and repeatedly informed the court that they were not undertaking their own representation. On this record, I would disagree with the majority opinion which concludes that error was committed because Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)) was not followed and that the trial judges should have appointed the public defender even over defendants' objections.

From my examination of the record, the defendants clearly and repeatedly declined to undertake their own representation. Rule 401(a) is inapplicable under this circumstance, and the court was not required to admonish defendants in accordance with Rule 401(a). (See *People v. Myles* (1981), 86 Ill. 2d 260, 267-69, 427 N.E.2d 59.) Although the defendants persistently refused the offer of the court to have the public defender represent them and instead asked for counsel other than a lawyer who was employed by the Lake County government, an indigent defendant has no right to choose among appointed counsel. (*People v. Tucker* (1981), 99 Ill. App. 3d 606, 610-11, 425 N.E.2d 511.) An indigent defendant is entitled to counsel other than the public defender only upon a showing of good cause. (99 Ill. App. 3d 606, 611, 425 N.E.2d 511.) No such good cause was shown here, and there was no abuse of discretion in denying appointment of counsel other than the public defender.

Finally, with respect to defendants' argument on appeal that the public defender should have been appointed even over their objections, I regard that argument as waived by defendants' own actions. They at all times refused the appointment of the public defender and have not argued on appeal that they at any time before, during, or after the trial requested the standby aid of the public defender. Generally, the right to counsel cannot be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass

954

the effective prosecution of crime. (*People v. Friedman* (1980), 79 Ill. 2d 341, 349, 403 N.E.2d 229; see also *People v. Taylor* (1984), 101 Ill. 2d 508, 523-24, 463 N.E.2d 705.) Under the unique circumstances here, I would conclude that defendants, by their actions, waived both their right to counsel and any contention on appeal that the public defender should have been appointed over their persistent objections. (See *United States v. Moore* (5th Cir. 1983), 706 F. 2d 538.) An accused should not enhance the probability of having his conviction reversed by persisting in obdurate, obstructionist tactics of the kind engaged in below.

I would affirm all the convictions below except Stanley Kosyla's conviction for escape, which I agree with the majority should be reversed.