2020 IL App (2d) 190038-U
No. 2-19-0038
Order filed December 22, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-456 |
| ANTHONY LAVAIL ADKINS, | ) ) ) | Honorable Donna R. Honzel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant was properly found guilty of escape from a peace officer where, after starting to comply with a uniformed officer's directive to turn around and place his arms behind his back, he fled by breaking free of the officer's grip on his arm as she tried to handcuff him.

¶ 2    Defendant, Anthony Lavail Adkins, appeals from his conviction in the circuit court of Winnebago County of escape from a peace officer under section 31-6(c) of the Criminal Code (Code) (720 ILCS 5/31-6(c) (West 2014)), contending that the evidence was insufficient to prove beyond a reasonable doubt that he was in the custody of a peace officer. Because the evidence was sufficient to prove defendant guilty beyond a reasonable doubt, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was indicted on one count of escape from a peace officer (720 ILCS 5/31-6(c) (West 2014)) and one count of resisting a peace officer (720 ILCS 5/31-1(a) (West 2014)). Defendant opted for a jury trial.

¶ 5     The following facts were established at the trial. According to Detective James Lake of the Rockford Police Department, at approximately 8 a.m. on February 25, 2015, he obtained an arrest warrant for defendant. After obtaining the warrant, Detective Lake formulated with other officers a plan to serve the warrant and take defendant into custody.

¶ 6     Later that day, at about 3:20 p.m. Detective Lake and other officers waited for defendant to arrive at his residence. After defendant arrived and entered his residence, several officers approached the front door. Officer Stacy Beaman went to the rear of the residence. When Detective Lake heard Officer Beaman state that defendant was in the backyard, he went to that location.

¶ 7     Upon entering the backyard, Detective Lake saw Officer Beaman attempting to handcuff defendant. Officer Beaman had defendant's left hand behind his back and was gripping his left wrist with her hand. Defendant's right hand, which was in front of defendant, held a fountain drink cup. According to Detective Lake, Officer Beaman was trying to put a handcuff around defendant's left wrist, but it would not fit over the cuff of his coat and his wristwatch. As Detective Lake walked toward Officer Beaman and defendant, defendant broke free of Officer Beaman's grip, ran through the backyard, and went over a fence.

¶ 8     According to Officer Beaman, on February 25, 2015, she was part of a team assigned to serve defendant with an arrest warrant. At about 3:20 p.m., as she sat in her squad car near

defendant's residence, she saw defendant arrive and enter his residence. As other officers approached the residence, Officer Beaman went to the back of the residence.

¶ 9 When Officer Beaman got to the rear of the residence, defendant exited the back door. Officer Beaman, who was in full uniform, identified herself to defendant as a police officer. She then ordered defendant to turn around and put his hands behind his back. Defendant turned around, faced away from Officer Beaman, and put his left hand behind his back. His right hand, which remained in front of him, held a large drink and a cellphone.

¶ 10 Officer Beaman approached defendant and grabbed his left wrist. She then removed her handcuffs from her belt and brought a handcuff to defendant's left wrist. As she did so, she "maintained control of that wrist." She started to put the handcuff on defendant's left wrist as she ordered him to drop the items in his right hand.

¶ 11 Officer Beaman had difficulty placing the handcuff on defendant's left wrist because of the cuff on his coat and his wristwatch. As she was "putting the handcuff on metal to skin," and maintaining her grip on defendant's left wrist, defendant pulled away from her grip and ran. Officer Beaman never got the clasp of the handcuff all the way around defendant's wrist. As defendant ran, Officer Beaman ordered him to stop, but he kept running and jumped a fence. On cross-examination, Officer Beaman testified that she still had a grip on defendant's wrist and "began to secure the handcuff" when he pulled his arm away and ran.

¶ 12 A minute or so after receiving a call that defendant was running, Officer Freese of the Rockford Police Department arrested defendant.

¶ 13 During deliberations, the jury asked the trial court for a legal definition of police custody. Over a defense objection, the court answered the jury that, for purposes of the escape statute, "a person is in [the] lawful custody of a peace officer, when, with more than a mere verbal

admonishment, that officer has exerted sufficient control over the person to indicate that person is being placed under arrest." The jury found defendant guilty of both escape and resisting a peace officer. Following the denial of defendant's motion for a new trial, the court sentenced defendant to three years' imprisonment on the escape conviction and to time served on the resisting conviction. Defendant, in turn, filed this timely appeal.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that he was in lawful custody before he fled from Officer Beaman.

¶ 16    Initially, we address the applicable standard of review. Defendant asserts that, because the issue of the sufficiency of the evidence depends on an application of undisputed facts to the language of the escape statute, *de novo* review applies. We disagree.

¶ 17    Ordinarily, the relevant inquiry when assessing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22. However, in cases involving a matter of statutory interpretation, *de novo* review applies. *People v. Perkins*, 2020 IL App (2d) 170963, ¶ 67.

¶ 18    This case does not involve a matter of statutory interpretation. The parties dispute not the meaning of statutory terms but whether the facts in this case satisfy those terms, specifically whether Officer Beaman exercised sufficient control over defendant to constitute custody for purposes of the escape statute. Thus, *de novo* review does not apply. See *People v. Garza*, 2019 IL App (4th) 170165, ¶ 17 (citing *People v. McClanahan*, 2011 IL App (3d) 090824, ¶ 11); see also *Perkins*, 2020 IL App (2d) 170963, ¶ 67 (where parties do not dispute the meaning of a statute and do not ask the reviewing court to adopt any broadly applicable legal rules, *de novo* review

does not apply to a sufficiency-of-the-evidence challenge). Nonetheless, our conclusion would be the same under either standard of review. See *Garza*, 2019 IL App (4th) 170165, ¶ 17 (applying both standards); see also *Perkins*, 2020 IL App (2d) 170963, ¶ 67 (same).

¶ 19    We next address whether the evidence was sufficient to prove beyond a reasonable doubt that defendant was in lawful custody before he fled from Officer Beaman. It was.

¶ 20    Section 31-6(c) of the Code provides, in pertinent part, that a "person in the lawful custody of a peace officer *** who intentionally escapes from custody" violates the statute. 720 ILCS 5/31-6(c) (West 2014). The statute does not define the term "lawful custody." *Garza*, 2019 IL App (4th) 170165, ¶ 18. For purposes of applying section 31-6(c), courts have focused on the amount of control that the officer had over the defendant. *Garza*, 2019 IL App (4th) 170165, ¶ 18; *McClanahan*, 2011 IL App (3d) 090824, ¶ 12 (citing *People v. Brexton*, 343 Ill. App. 3d 322 (2003)).

¶ 21    Here, there was ample evidence that Officer Beaman exerted control over defendant before he broke free and ran. She was in police uniform and identified herself as a police officer. Further, she ordered defendant to turn around and put his hands behind his back. Defendant substantially complied by turning around and putting his left hand behind his back. Officer Beaman then grabbed defendant's left wrist. As she removed her handcuffs from her belt, she "maintained control of that wrist." She continued to maintain her grip on defendant's wrist as she tried to position the handcuff around defendant's coat cuff and wristwatch. According to Officer Beaman, the handcuff was actually touching defendant's wrist. At that point, Officer Beaman had physical control of defendant. Although she had not yet secured the handcuff to defendant's wrist, she still had a grip on his wrist. Thus, defendant was in lawful custody before he broke away and ran.

¶ 22    Defendant asserts, however, that he was not in custody, because Officer Beaman never told him that she had an arrest warrant or that he was under arrest.  However, the jury could reasonably conclude that defendant knew that he was being arrested, because Officer Beaman, who was in unform and identified herself as a police officer, ordered defendant to turn around and place his hands behind his back.  The incantation of the word "arrest" was not necessary to establish that defendant was in custody.  Indeed, whether a defendant was under arrest is just one factor to consider in determining whether he was in custody within the meaning of section 31-6(c).  *People v. Lauer*, 273 Ill. App. 3d 469, 474-75 (1995) (defendant guilty of escape though his arrest was not "completed" before he broke away from the police officer).  The absence of that factor does not defeat a finding of custody where, as here, there is other evidence that defendant was in the custody of the police.

¶ 23    Defendant's reliance on *People on Kosyla*, 143 Ill. App. 3d 937 (1986), is misplaced.  In *Kosyla*, the officers told the defendant that he was under arrest but never made physical contact with defendant nor restrained his freedom of movement.  *Kosyla*, 143 Ill. App. 3d at 951-52.  After being told that he was under arrest, but before the police touched him, the defendant ran out of his home and into a cornfield, eluding capture.  *Kosyla*, 143 Ill. App. 3d at 952.  The appellate court held that the defendant intended to evade custody altogether as opposed to escape from it.  *Kosyla*, 143 Ill. App. 3d at 952.

¶ 24    This case is clearly distinguishable from *Kosyla*.  Here, Officer Beaman was able to exert physical control over defendant by grabbing and maintaining her grip on his wrist.  Thus, *Kosyla*, does not support defendant.

¶ 25    Because the evidence established that defendant had substantially complied with Officer Beaman's order by turning around and putting his left hand behind his back and that Officer

Beaman had maintained a grip on defendant's wrist while trying to handcuff defendant, the State proved beyond a reasonable doubt that defendant was in lawful custody within the meaning of section 31-6(c) of the Code.

¶ 26                               III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 28    Affirmed.