THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC LAUER, Defendant-Appellant.

First District (3rd Division)   No. 1—92—3055

Opinion filed June 28, 1995.

Maria A. Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial, defendant, Eric Lauer, was convicted of two counts of resisting arrest (720 ILCS 5/31—1 (West 1992)) and one count of escape (720 ILCS 5/31—6 (West 1992)) and was sentenced to three concurrent one-year terms of reporting supervision and 100 hours of community service. On appeal, defendant asserts that (1) his convictions for resisting arrest must be reversed because the complaints failed to specifically allege the physical acts committed by him that constituted resisting arrest; (2) he was not proved guilty of escape beyond a reasonable doubt; and (3) he cannot be convicted of both resisting a peace officer and escape from that same officer because they arose out of the same act. For the following reasons, we affirm.

Defendant was charged with disorderly conduct, criminal damage to property, several counts of aggravated assault, battery, escape, and resisting arrest. Prior to trial, the State dismissed the disorderly conduct charge and defendant's motion to quash the arrest was denied.

The following testimony was heard at trial.

Niles police sergeant John Fryksdale and Niles police officer Thomas Davis testified that they went to 8359 Maynard Road, Niles, on May 8, 1991, after receiving a report of a loud party. Both officers stated that they heard music from a block away as they approached the residence around 1:20 a.m. There was a van in the driveway with several people in and around the van.

According to Fryksdale, defendant was in the front seat of the van working on the radio. There appeared to be six people inside the van, 15 people outside the van, and several more people going in and out of the house. After Fryksdale told defendant that there had been a report of a loud party in defendant's driveway, defendant agreed to clean up and take the party inside. Fryksdale returned to his squad car, where he and Davis waited 8 to 10 minutes before returning to the property.

When the officers ordered everyone to leave, defendant told them to get off his property and told his friends to go into his house. A heated argument began between defendant and the officers and eventually escalated into a physical struggle. Much of the confrontation was videotaped by defendant and played several times during the trial.

According to Officer Fryksdale, defendant kicked him in the leg before both officers were knocked to the ground and the scuffle ensued. Officer Davis testified that he did not see how the scuffle started, but he tried to handcuff defendant. Fryksdale testified that defendant broke away and ran into the house after he hit Davis in the shins. During the struggle, the videocamera was knocked to the ground.

The officers pursued defendant. When they reached him, they tried to handcuff him, but he broke free. They caught up to him in the back bedroom, where Fryksdale struggled with him as Davis put his arm around defendant's neck in a retention hold.

Defendant was struggling and grabbing at Davis' arms as Davis pulled him backwards from the back bedroom toward the front door. Upon reaching the front part of the house, defendant dropped to his knees, then to the ground, before grabbing Davis' arm and pushing it behind the officer's back. Defendant then broke free, ran out the kitchen door, and disappeared.

After the State rested, the trial court made a directed finding of not guilty on the battery and criminal damage to property charges, but denied defendant's motion for a directed finding on the aggravated assault, resisting arrest, and escape charges.

Rose Lauer, defendant's mother, testified that she was home on May 8, 1991. Her husband and granddaughter were sleeping upstairs and she was watching television in the living room with her sister and a friend. After midnight, Ms. Lauer heard noises from the front of the house, but she did not hear a radio, music, or drilling. Defendant came into the house, said that there was trouble with the police, and took a videocamera outside.

Shortly afterwards, defendant's friends came into the house and

Ms. Lauer heard scuffling outside. She went to the door, but the police shoved her back inside. She pushed the door open again and saw the police officers beating defendant. Ms. Lauer can be heard on the videotape begging the police not to hurt defendant.

According to Ms. Lauer, defendant tore off his shirt and ran into the house. The officers pursued him and were beating him in the hallway. Ms. Lauer gave the videocamera to Joseph Scianna, a friend of defendant, and told him to start filming. There is a gap in the videotape from outside until Davis pulled defendant into the living room. Ms. Lauer stated that she was begging the police to stop when defendant broke loose and ran.

Joseph Scianna testified that he was at the Lauer home on May 8, 1991, while defendant was rewiring the lights in Matthew Gresky's van. After defendant came into the house, the police followed and grabbed him in the front room. Scianna began filming with the videocamera. A police officer had his arm around defendant's neck, but defendant did not say anything as he was moved down the hallway to the front door.

Defendant testified that he began rewiring Gresky's van around 11:30 p.m. or midnight on May 8, 1991. Matthew Gresky was a friend. There was no radio in the van and no one was playing a musical instrument or making loud noises. Later that evening, the police arrived. Officer Fryksdale told defendant that there was a loud music complaint. He said that he was going to leave and when he returned in 10 minutes, everyone should be gone. Defendant told Fryksdale that was not a problem and everyone would leave. Fryksdale returned to his squad car and another police officer drove up. According to defendant, Fryksdale would not let anyone leave because his car was partially blocking the driveway. Defendant went inside the house and got the videocamera because he had a history of not getting along with the Niles police.

When the police officers returned to the property, defendant began filming. He denied using vulgarities and insulting language until the officers came toward him and kept telling him to call the police. Officer Fryksdale told defendant to "chill out," then said "guess what," and kneed him in the groin. Defendant denied kicking Fryksdale in the shin, doing any physical acts to incite Fryksdale, striking Davis prior to getting kneed, or using threatening language.

After being kicked, defendant fell to the ground and Davis grabbed his neck. During the scuffle, defendant dropped the videocamera and Davis fell over. Fryksdale held the front door closed and told Ms. Lauer to stay inside. Defendant told Fryksdale to "get his hands off my mom," and called out to his mother to get his father.

Davis grabbed defendant from behind and both officers were on top of defendant. In the struggle, defendant's shirt was torn off. Defendant broke loose, grabbed the camera, and went inside the house. Defendant denied hitting the officers or attempting to take their weapons. He said that he resisted only so that they would stop beating him.

Inside the house, defendant went toward the back bedroom, but Fryksdale grabbed him in the hallway. Davis put him in a chokehold and dragged him toward the front door. It was hard for defendant to breath, so he grabbed Davis' arm to release the pressure before he twisted it behind Davis' back and dropped to the ground. Defendant stated that he felt that he was in danger. After breaking free, defendant ran out the back door in order to protect himself. Defendant stated that he was never told he was under arrest.

Following deliberations, the jury returned verdicts of not guilty for aggravated assault against both officers, not guilty of escape against Officer Fryksdale, but guilty of resisting both officers and guilty of escape against Officer Davis.

On appeal, defendant asserts that his convictions for resisting arrest must be reversed because the complaints were written solely in the general statutory language and failed to specifically allege the physical acts committed by him that allegedly constituted resisting arrest.

The complaints charging resisting arrest read as follows:

> "[The police officers] state[ ] that Erick W. Lauer, 8359 Maynard Rd., Niles, IL has, on or about 8, May 1991 at 8359 Maynard Rd. Niles Cook County Illinois, committed the offense of RESISTING A PEACE OFFICER in that he knowingly resisted the performance by [the police officers] known by him to be [ ] police officer[s] of an authorized act, placing him under arrest, within the official capacity os [sic] said peace officer[s]."

■ A defendant has the fundamental right, under both the Federal (U.S. Const., amend. VI) and State Constitutions (Ill. Const. 1970, art. I, § 8), to be informed of the nature and cause of criminal accusations made against him. (*People v. Meyers* (1994), 158 Ill. 2d 46, 51, 630 N.E.2d 811.) An instrument that charges an offense in the statutory language is sufficient if those words so particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged. (*Meyers*, 158 Ill. 2d at 51-52.) If, however, the statute defines the offense in general terms, a charge couched in the statutory language is insufficient and the facts that constitute the crime must be specifically set forth in the complaint. *People v. Hughes* (1992), 229 Ill. App. 3d 469, 473, 592 N.E.2d 668.

■ The few cases that analyze section 31—1 of the Criminal Code of 1961 (720 ILCS 5/31—1 (West 1992)) involve complaints that charge obstructing a peace officer (*Hughes*, 229 Ill. App. 3d at 470; *People v. Hilgenberg* (1991), 223 Ill. App. 3d 286, 287, 585 N.E.2d 180) or obstructing or resisting a peace officer in the disjunctive (*People v. Shinn* (1972), 5 Ill. App. 3d 468, 469, 283 N.E.2d 502; *People v. Leach* (1972), 3 Ill. App. 3d 389, 391, 279 N.E.2d 450). A complaint that uses the statutory language to charge resisting or obstructing a peace officer in the disjunctive is too general because resisting can be different from obstructing, which can involve a wide range of physical acts. Obstructing a peace officer is much broader than resisting a peace officer. As a result, a complaint that charges resisting or obstructing a peace officer in the disjunctive must set forth sufficient allegations describing what physical act or acts of the defendant constituted resisting or obstructing a peace officer. *Hilgenberg*, 223 Ill. App. 3d at 289.

In contrast, resisting arrest is a physical act that necessarily involves a physical struggle. It does not potentially involve the broad range of actions that obstructing a peace officer can involve. For that reason, a complaint charging resisting a peace officer does not need to specify particular physical acts. The statute's general language is sufficient because it so particularizes the offense that it sufficiently informs the defendant of the precise crime with which he or she was charged. *Leach*, 3 Ill. App. 3d at 394.

■ Defendant next asserts that he was not proven guilty of escape beyond a reasonable doubt because his arrest was never completed and he was never in the lawful custody of Officer Davis, which is an element of the offense of escape. Defendant contends that Fryksdale and Davis were never able to complete their arrest before he ran out of the house. We disagree.

In contrast to *People v. Kosyla* (1986), 143 Ill. App. 3d 937, 952, 494 N.E.2d 945, on which defendant relies, defendant was in Officer Davis' lawful custody at the time of his escape. Davis did more than merely announce that defendant was under arrest. He actually restrained defendant before defendant escaped by breaking away and running out the back door. He had physically moved defendant from the back bedroom to the front part of the house. As a result, there was sufficient evidence for the jury to convict defendant of escape.

■ Finally, defendant asserts that he cannot be convicted of both resisting arrest and escaping from Officer Davis because both convictions arose out of the same act. Defendant contends that the struggle began outside, primarily with Fryksdale, continued without a break inside the house, primarily with Davis, and culminated when defen-

dant ran out of the house while Davis was trying to take him into custody.

Even if the resisting and escape charges were not necessarily based on the same act, defendant claims that one conviction must still be vacated because the State never argued to the jury that the resisting arrest and escape charges were based on two separate acts. Because of the facts of the case and the way they were presented to the jury, defendant maintains that he may have been convicted of both offenses based on the struggle inside the house.

We find that the resisting arrest and escape charges were not based on the same physical act. Factors to determine whether the defendant's conduct consisted of a single act or multiple acts include: (1) the existence of an intervening act or event; (2) the time interval between successive parts of the defendant's conduct; (3) the identity of the victim; (4) the similarity of the acts performed; (5) whether the conduct occurred at the same location; and (6) the prosecutorial intent as reflected in the language of the information. *People v. Rodriguez* (1994), 267 Ill. App. 3d 942, 952, 641 N.E.2d 939.

There was a sufficient break between defendant's resisting arrest, whether based on the struggle inside the house or outside the house, and his escape, which did not occur until he successfully broke away and fled out the back door. The escape did not occur while defendant was being restrained, but when he successfully broke away, fled from the house, and was not immediately apprehended.

Based on the foregoing, we affirm the circuit court judgment.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.