1028

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STERLING JOHNSON, Defendant-Appellant.

Third District    No. 3—07—0687

Opinion filed December 17, 2009.

McDADE, J., concurring in part and dissenting in part.

Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

Defendant, Sterling Johnson, was convicted of resisting arrest (720 ILCS 5/31—1 (West 2006)) and escape (720 ILCS 5/31—6 (West 2006)). On appeal, defendant claims that the State failed to prove him

guilty of escape, that he is entitled to an additional day of credit for presentence custody, and that he was deprived of the effective assistance of counsel by his attorney's failure to file a motion to withdraw his bond while he was in custody on another offense.

## BACKGROUND

On March 27, 2006, defendant was charged by information with aggravated battery. The information was superceded by an indictment which charged defendant with aggravated battery, resisting arrest, and escape. The aggravated battery charge alleged that defendant knowingly caused bodily harm to Chad McCollum, knowing McCollum to be a peace officer engaged in the performance of his authorized duties. The charge of resisting arrest noted that defendant knowingly resisted McCollum's performance of an authorized act within his official capacity, specifically the arrest and detention of defendant. The resisting charge stated that defendant knew McCollum to be a peace officer engaged in the execution of official duties, yet defendant pulled his arm away from the grasp of McCollum, ultimately causing an injury to McCollum. The escape charge alleged that defendant, while in the lawful custody of McCollum for the commission of a felony offense, intentionally escaped from McCollum's custody.

At trial, Officer McCollum testified that he was a patrol officer with the Peoria police department on March 26, 2006. While on duty that day, McCollum saw defendant, whom he knew, sitting in the front passenger seat of a car. McCollum knew there was an active warrant for defendant and, after confirming the existence of the warrant, approached the car and informed the driver that he needed to talk with defendant. Defendant subsequently exited the vehicle. McCollum then walked around to defendant and instructed defendant to turn around and place his hands on his back. Defendant complied with McCollum's request, and McCollum put a handcuff on defendant's right wrist.

McCollum stated that as he reached around for defendant's left arm, defendant "tensed his arm up and stated he wasn't fucking going back to jail." Defendant then pulled away and swung around with his right arm, striking McCollum's left shoulder.

As defendant turned to run, McCollum grabbed the handcuff dangling from defendant's right wrist. Defendant again pulled away and McCollum's right pinky finger was cut in the process. Defendant ran into a nearby apartment building with McCollum pursuing him on foot. McCollum called for backup, which arrived and defendant was eventually located in the apartment building. Defendant still had the handcuff attached to his right wrist when he was located.

McCollum was in full uniform and driving a marked squad car at the time of the encounter. He stated that it was a routine part of his duties to arrest individuals with outstanding warrants. McCollum testified that defendant was not free to leave when he began handcuffing him and that, while his squad car was equipped with a video camera, he did not have it activated during the incident as he was trying to expedite defendant's arrest.

During deliberations, the jury presented the trial court with two questions. First, the jury asked for the legal definition of "in custody." The jury also asked the court for a dictionary. Ultimately, the jury returned its verdicts before the court was able to respond to either question. The jury found defendant not guilty of aggravated battery, but guilty of resisting arrest and escape.

At sentencing, neither party presented any formal evidence. Ultimately, the trial court imposed a sentence of 14 years' imprisonment for defendant's escape conviction. This appeal followed.

## ANALYSIS

Defendant does not dispute any facts entered into evidence during his trial. He argues that the facts were not sufficient, as a matter of law, to convict him of the offense of escape. Therefore, defendant posits, our standard of review is *de novo*. The State disagrees and argues that, since defendant is attacking the sufficiency of the State's evidence following conviction, our standard of review is that set forth in *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985): whether any rational trier of fact could have found the essential elements of the crime after reviewing the evidence in the light most favorable to the State. We find a sufficient record before us to affirm defendant's conviction under either standard.

■ A person is guilty of escape when "in the lawful custody of a peace officer for the alleged commission of a felony offense," he "intentionally escapes from custody." 720 ILCS 5/31—6(c) (West 2006). Defendant argues that the State's "evidence was legally insufficient to establish that defendant was in custody, and therefore his conviction of escape should be reversed." Defendant continues by claiming the term "in custody" for purposes of the escape statute means a defendant "must be physically restrained" and since the police officer had not yet "succeeded in making an arrest" before defendant fled, the State failed to prove defendant was "in custody" per the statute. Defendant concludes that since the officer "had not completed the arrest of defendant at the time defendant pulled away and fled," this is merely a resisting arrest case and cannot be an escape case.

The State claims that there is no doubt defendant was in custody within the meaning of the statute as the officer actually restrained defendant and prevented "the defendant's locomotion by holding the defendant's right arm and putting the handcuffs on the defendant's right wrist." The State claims the defendant acknowledged he was in custody when he turned around and put his hands behind his back so that he could be cuffed. This, the State asserts, evinced defendant's submission "to the authority of the officer" and acknowledgment that he was in custody for the purposes of being arrested. The State concludes that defendant's physical restraint coupled with his submission to custody shows, as a matter of law, that he was "in custody" within the meaning of the escape statute.

Recently, our supreme court noted that the term "custody" is not defined under either the Code of Criminal Procedure of 1963 (725 ILCS 5/100—1 *et seq.* (West 2004)) or the Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 2004)). *People v. Beachem*, 229 Ill. 2d 237, 244, 890 N.E.2d 515, 519 (2008). The *Beachem* court, however, restated a prior pronouncement that the term "custody" is " ' "very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." ' " *Beachem*, 229 Ill. 2d at 245, quoting *People v. Campa*, 217 Ill. 2d 243, 254, 840 N.E.2d 1157, 1165 (2005), quoting *People v. Campa*, 353 Ill. App. 3d 178, 818 N.E.2d 787 (2004). While *Beachem* dealt with custody as it pertains to pretrial detention for the purposes of credit for time served and *Campa* involved custody within the meaning of the speedy trial statute in Illinois, we find our supreme court's declaration that the term "custody" is a "very elastic" concept to be instructive.

In *People v. Brexton*, the Second District examined the term "lawful custody" as it appears in the escape statute (720 ILCS 5/31—6 (West 2002)) and the aiding escape statute (720 ILCS 5/31—7 (West 2002)). *People v. Brexton*, 343 Ill. App. 3d 322, 798 N.E.2d 111 (2003). The *Brexton* court noted that the courts in *People v. Kosyla*, 143 Ill. App. 3d 937, 494 N.E.2d 945 (1986), and *People v. Lauer*, 273 Ill. App. 3d 469, 653 N.E.2d 30 (1995), define lawful custody "by looking at the control exercised by the police over the defendant." *Brexton*, 343 Ill. App. 3d at 326.

The *Lauer* court affirmed defendant's conviction for escape. *Lauer*, 273 Ill. App. 3d at 475. In *Lauer*, a heated argument took place between defendant and police officers that escalated into a physical struggle. During the scuffle, officers attempted to handcuff defendant, but defendant broke away and ran into his house after striking one of the officers. *Lauer*, 273 Ill. App. 3d at 471.

The officers pursued Lauer into his house and again attempted to handcuff him, but defendant broke free. Eventually, the officers caught up to defendant in a back bedroom, where one officer struggled with him while the other officer put his arm around defendant's neck in a retention hold. *Lauer*, 273 Ill. App. 3d at 471. The officers were successful in moving defendant from the back bedroom toward the front door, but upon reaching the front part of the house, defendant broke the officers' grasp of him, ran free out the kitchen door, and disappeared. *Lauer*, 273 Ill. App. 3d at 471. Ultimately, a jury returned a guilty verdict of escape against defendant that was affirmed on appeal. *Lauer*, 273 Ill. App. 3d at 475. Like the defendant herein, the *Lauer* defendant claimed that his conviction for escape must be reversed "because his arrest was never completed and he was never in the lawful custody of" the police officers. *Lauer*, 273 Ill. App. 3d at 474.

The *Lauer* court found that defendant was in the lawful custody at the time of his escape as he was actually restrained and had been physically moved prior to breaking away and running out the back door. As a result, the *Lauer* court found that there was sufficient evidence for the jury to convict defendant of escape. *Lauer*, 273 Ill. App. 3d at 474.

The *Lauer* court contrasted its case to *Kosyla*. The *Kosyla* court reversed defendant's conviction for escape, finding that defendant was not in custody at the time he fled the police. *Kosyla*, 143 Ill. App. 3d at 952. The facts in *Kosyla* show that defendant came out of his house after his wife was arrested for disorderly conduct and, after being told he was under arrest but before being restrained whatsoever or having any physical contact with an officer, went back into his residence. As the officers waited for their shift commander to come to defendant's residence, defendant ran out the back of the house. *Kosyla*, 143 Ill. App. 3d at 952. Defendant was ultimately captured and convicted for escape. *Kosyla*, 143 Ill. App. 3d at 952.

With little analysis, the *Kosyla* court held that the State's evidence proved, "at most, that the defendant was guilty of resisting arrest." *Kosyla*, 143 Ill. App. 3d at 952. The court found that while the defendant was in the house, he was "not yet in lawful custody of a peace officer" at the time he fled and, therefore, reversed defendant's conviction for escape. *Kosyla*, 143 Ill. App. 3d at 952.

■ The case at bar is clearly more analogous to *Lauer* than *Kosyla*. In *Lauer*, the officers had not yet been able to handcuff even a single wrist of defendant's, yet defendant was found to be in the lawful custody of the officers when he fled. Unlike *Lauer*, or the case at bar, there had been no restriction of defendant's freedom of movement in *Kosyla*. The State's argument herein that defendant acquiesced to the officer's control by placing his hands behind his back so that they

could be handcuffed clearly indicates defendant knew he was in custody at the time he fled. As in *Brexton*, the "control exercised by the police officer over the defendant" leaves no doubt that, as a matter of law, he was in custody at the time he fled. *Brexton*, 343 Ill. App. 3d at 326. Therefore, we affirm defendant's conviction for escape.

■ The second issue raised on appeal by defendant concerns his presentence custody credit. Defendant argues that his mittimus reflects an improper calculation for his pretrial custody from March 26, 2006, to April 19, 2006.

A defendant is entitled to one day of credit for each day spent in presentence custody as a result of the offense for which the sentence was imposed. 730 ILCS 5/5—8—7(b) (West 2006). A defendant held in custody for any part of the day should be given credit against his sentence for that day. *People v. Smith*, 258 Ill. App. 3d 261, 630 N.E.2d 147 (1994).

Defendant claims, and the State admits, the record is clear that defendant spent 25 days in presentence custody as a result of this charge, yet the mittimus only credits him for 24 days. Therefore, we remand this matter to the trial court to amend the mittimus to reflect 25 days' credit for presentence custody from March 26, 2006 (the day of defendant's arrest), to the day defendant bonded out for this offense, April 19, 2006.

■ The final issue raised by defendant is his claim that he was deprived of effective assistance of counsel by his counsel's failure to file a motion to withdraw his bond in this case while he was in custody on another case. The State concedes the issue.

Given the State's concession, we need not address the issue of whether or not counsel was, in fact, deficient for failing to move to withdraw defendant's bond in this matter. Therefore, we remand this matter to the trial court to determine the amount of additional pretrial custody credit.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed as modified and the cause is remanded with directions.

Affirmed as modified; cause remanded with directions.

HOLDRIDGE, J., concurs.

JUSTICE McDADE, concurring in part and dissenting in part:

I concur in the majority's judgment remanding the matter to the trial court to amend the mittimus and determine the appropriate

amount of additional pretrial custody credit. 396 Ill. App. 3d at 1033. I dissent, however, from the finding that the evidence was sufficient to prove defendant guilty of escape beyond a reasonable doubt. 396 Ill. App. 3d at 1032-33. Defendant argues that the facts do not establish that he was in the "lawful custody" of McCollum at the time he pulled away and fled into the apartment building. I agree.

At the outset, I note that the parties dispute the appropriate standard of review. Defendant contends that the facts are undisputed and thus the appropriate standard of review is *de novo*. The State does not actually challenge this assertion. Instead, the State argues that "the determination of whether *** defendant was proven guilty beyond a reasonable doubt was a finding of fact delegated to the jury and not a matter of law as argued by *** defendant"; and thus the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The majority does not offer any substantive analysis as to this issue. Instead, it simply finds that the record is sufficient to "affirm defendant's conviction under either standard." 396 Ill. App. 3d at 1030. I choose to view the facts under the appropriate standard of review. Because the facts are undisputed and defendant merely contends that the State's evidence of guilt was insufficient to sustain his conviction, *de novo* review is appropriate. See *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000). I now turn to the question of whether defendant was proven guilty of escape beyond a reasonable doubt.

Section 31—6(c) of the Criminal Code of 1961 (Code) states:

> "A person in the lawful custody of a peace officer for the alleged commission of a felony offense and who intentionally escapes from custody commits a Class 2 felony ***." 720 ILCS 5/31—6(c) (West 2006).

While the term "lawful custody" is not defined in the escape statute, the parties discuss three cases which examine the issue of custody for purposes of escape (*People v. Lauer*, 273 Ill. App. 3d 469, 653 N.E.2d 30 (1995); *People v. Elsperman*, 219 Ill. App. 3d 83, 579 N.E.2d 22 (1991); *People v. Kosyla*, 143 Ill. App. 3d 937, 494 N.E.2d 945 (1986)).

The defendant in *Elsperman* was charged with obstructing justice. The charge alleged that defendant, " 'with the intent to prevent *** apprehension *** knowingly ran from, hid from and had to be chased on foot by *** a peace officer, thereby concealing the physical evidence of his person.' " *Elsperman*, 219 Ill. App. 3d at 84, 579 N.E.2d at 23. In affirming the trial court's dismissal of the charge, the court found that it is the offense of resisting arrest that the legislature intended to

apply to those instances where an officer attempts to make an arrest but the suspect runs away. *Elsperman*, 219 Ill. App. 3d at 85, 579 N.E.2d at 23. The offense of escape, however, applies to those situations where a police officer has succeeded in making an arrest and the suspect escapes from custody. *Elsperman*, 219 Ill. App. 3d at 85-86, 589 N.E.2d at 23.

After being found guilty of escape, the defendant in *Kosyla* argued that the State failed to establish the element of custody. There, police confronted the defendant at his residence after receiving a complaint that he was playing his music too loudly. The police told the defendant he was under arrest. In response, the defendant indicated that he was going to call his lawyer and ran into his house. The defendant then reappeared, shouted an obscenity at the police, and ran into a cornfield behind his home to elude the police. He was later arrested and charged with escape. On appeal, the court stated that "[b]ased on [the] facts, the defendant was not yet 'in the lawful custody of a peace officer' as that phrase is used in section 31—6(c)." *Kosyla*, 143 Ill. App. 3d at 952, 494 N.E.2d at 955.

The defendant in *Lauer* was found guilty of escape. On appeal, the defendant argued that he was not proven guilty beyond a reasonable doubt "because his arrest was never completed and he was never in the lawful custody" of a police officer. *Lauer*, 273 Ill. App. 3d at 474, 653 N.E.2d at 33. There, the police and the defendant engaged in an altercation outside the defendant's residence. One of the officers attempted to handcuff the defendant, but the defendant broke away and ran inside the house. Inside the house, the defendant ran to the back bedroom where the officers grabbed him, put him in a choke hold, and dragged him to the front of the house. The defendant ultimately freed himself from the officers' grasps and ran out of the house. In affirming the defendant's conviction, the court stated that, in contrast to *Kosyla*, the police did more than just announce the defendant was under arrest. *Lauer*, 273 Ill. App. 3d at 474, 653 N.E.2d at 33. The officer had restrained the defendant and physically moved him from the back to the front room of the house before the defendant broke free and ran out the back door of the house. *Lauer*, 273 Ill. App. 3d at 474, 653 N.E.2d at 33. As a result, the court held that this was sufficient evidence to establish "lawful custody." *Lauer*, 273 Ill. App. 3d at 474, 653 N.E.2d at 33.

The above authority illustrates that "lawful custody" is defined by the control exercised by the police over the defendant. In the present case, I cannot say that the evidence presented at trial was sufficient to establish "lawful custody." The record is void of any evidence that defendant was even told that he was under arrest. Instead, the

evidence showed that defendant exited the vehicle because McCollum informed the driver that he needed to "talk" to defendant. The majority in affirming defendant's conviction, however, relies upon the fact that defendant subsequently placed his hands behind his back at the direction of McCollum and McCollum then placed a handcuff on defendant's right wrist to establish that defendant was "in the lawful custody of" McCollum. 396 Ill. App. 3d at 1032. This fact does not establish that defendant submitted to custody, however, because it is unclear that McCollum ever actually told defendant he was under arrest. The proposition that someone can submit to something of which he is unaware simply defies logic.

Immediately after the handcuff was placed on defendant, he spun out of McCollum's reach and fled. While McCollum clearly attempted to arrest defendant, he never succeeded in doing so. See *Elsperman*, 219 Ill. App. 3d at 85-86, 589 N.E.2d at 23. Unlike the facts presented in *Lauer*, the facts here do not establish that McCollum ever had control over defendant. See *Lauer*, 273 Ill. App. 3d at 474, 653 N.E.2d at 33. Moreover, the *Lauer* court's decision rested upon the parties' second altercation where the officer had restrained the defendant and physically moved him from the back bedroom to the front room of the house before the defendant broke free. It did not rest upon the parties' initial contact where the officer attempted to handcuff the defendant, but the defendant broke away and ran inside the house. Thus, while the facts of this case support defendant's conviction of resisting a peace officer, I do not believe they support defendant's conviction of escape.

Accordingly, I would vacate defendant's conviction of escape and remand the matter with instructions that the trial court: (1) enter judgment and impose sentence only on defendant's conviction of resisting a peace officer; (2) amend the mittimus to reflect credit for one additional day spent in custody; and (3) determine the appropriate amount of simultaneous custody credit to be awarded.