2025 IL App (2d) 240323-U
No. 2-24-0323
Order filed May 19, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-2325 |
| DELILAH BARR, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The indictment that alleged that defendant committed resisting or obstructing a peace officer causing injury was not deficient; (2) the State proved defendant guilty beyond a reasonable doubt; and (3) the State's rebuttal closing argument was not improper and did not constitute plain error.

¶ 2    Defendant, Delilah Barr, was convicted by a Kane County jury of resisting or obstructing a peace officer causing injury, a class 4 felony (720 ILCS 5/31-1(a-7) (West 2022)).  Defendant appealed, arguing that the indictment did not state an offense, her conviction should be reduced to a misdemeanor because the State failed to prove that she was the proximate cause of the peace

officer's injuries, and that she is entitled to a new trial because the State made improper statements to the jury during rebuttal closing argument. For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4     Defendant's charge stems from a traffic stop conducted on December 11, 2022. The following facts are taken from police body-worn and dashboard-mounted cameras presented at defendant's trial.

¶ 5     On the night of December 11, Kane County deputy sheriff Jason Katsuleas pulled over a white Kia minivan for a missing rear license plate and broken headlight. Inside the vehicle were a male driver, defendant in the front passenger seat, and three people in the back seat underneath a blanket. Defendant showed Katsuleas a license plate and the driver explained that the plate could not be mounted because the screws were stripped. The driver also explained that his three children were in the backseat underneath the blanket. Katsuleas ran the information of the driver and defendant and found that their licenses were valid and there were no outstanding warrants. However, when he ran the plates, they came back belonging to a different vehicle. Additionally, the VIN listed on the insurance card did not match any vehicle. He called for backup and Kane County deputy sheriff Alex Vaughn arrived.

¶ 6     Katsuleas and Vaughn approached the vehicle to ask all the occupants to exit. The driver agreed and stood outside the vehicle with Katsuleas. He explained to Katsuleas that he had just purchased two vehicles from the same seller and the seller must have mixed up the license plates. Meanwhile, defendant did not comply with Vaughn's orders to exit the vehicle. She repeatedly refused to exit and requested to speak with a female deputy. Vaughn told her that no female deputy was available. Katsuleas put the driver in the back of his squad car and joined Vaughn at the front passenger side door. After an extended verbal altercation with defendant, the rear passenger side

door opened and the children joined in the verbal dispute. A deputy can be heard telling the children to stop spitting on him. When the deputies reached into the vehicle to grab defendant, she climbed over the center console to the driver's seat. Katsuleas then pointed his TASER at defendant to induce her to comply. (He never deployed the TASER). The deputies moved to the driver's side door, opened it, forcibly removed defendant from the vehicle, and threw her to the ground. Katsuleas attempted to handcuff defendant while on the ground.

¶ 7 At that point, the three children exited the vehicle, ran to the deputies, and began to kick and yell at them. Katsuleas continued to attempt to handcuff defendant on the ground as defendant moved her arms and body to avoid being handcuffed. Vaughn tried to contain the two children that were kicking Katsuleas. Defendant was finally handcuffed after one minute and seventeen seconds on the ground with Katsuleas. Katsuleas then assisted Vaughn with detaining the children. Katsuleas again ended up on the ground trying to handcuff the children for over three minutes.

¶ 8 Defendant was indicted on April 27, 2023. The indictment stated:

> "The [g]rand [j]ury, charges that on or about December 11, 2022, defendant *** knowingly resisted and or obstructed the performance of Jason Katsuleas of an authorized act within his official capacity, being the arrest of defendant and a traffic stop investigation, knowing Jason Katsuleas to be a peace officer engaged in the execution of his official duties, in that defendant actively refused to exit a vehicle and resisted being placed under arrest, and said resisting or obstructing was the proximate cause of an injury to Jason Katsuleas."

Prior to trial, defendant moved to dismiss the indictment because it did not state a criminal offense. 725 ILCS 5/114-1(a)(8) (West 2022). The indictment, defendant argued, merely restated the

statutory language in violation of the federal and Illinois constitutions. The trial court denied the motion.

¶ 9 Defendant's trial was conducted on March 18, 2024. Vaughn and Katsuleas testified that the purpose behind removing the occupants was to ensure the deputies' safety as they tried to obtain the vehicle's VIN and conduct their investigation. Katsuleas also testified that he realized he had injuries on his legs after leaving the scene of the traffic stop. Images of the injuries were entered into evidence. The images showed bloody scrapes just beneath his knees on each leg. He stated that he believed that the injuries were the result of struggling on the ground with defendant but he did not immediately feel the injuries due to adrenaline.

¶ 10 After the State rested, defendant unsuccessfully moved for a directed finding. Defendant did not present any witnesses. During closing arguments, defendant argued that the State failed to meet its burden of proving that she was the cause of Katsuleas' injuries. She claimed that the children were the cause of his injuries because they repeatedly kicked him and he spent more time on the ground trying to arrest them. Defendant also averred that the deputies' actions during the traffic stop were unnecessary and excessive.

¶ 11 In rebuttal, the prosecutor summarized defendant's closing argument as "[i]t's those kids that hurt those officers." The prosecutor continued:

"The case is not about the kids. This case is about something that all adults know. You pay a mortgage. If you have a car, if you register, if you have a job, you understand that your choices and your decisions lead to consequences that ultimately you are responsible for. Fundamentally, that means you are responsible for them. You don't blame it on your kids. That's not exactly what happened here. I'm not saying these kids did not

participate in this, but the blame for what happened or the crime that was committed in this case was committed by the defendant. It wasn't committed by those kids."

The prosecutor then reviewed the evidence that he argued constituted physical resistance: defendant refused to exit the vehicle when asked; she "jump[ed]" to the driver's seat; the deputies forcibly removed defendant from the vehicle; and Katsuleas arrested her after over a minute struggling on the ground. The prosecutor argued that the video evidence showed that Katsuleas struggled more while trying to arrest defendant than he did while trying to arrest the children.

¶ 12 The prosecutor then responded to defendant's argument that the deputies acted excessively or unreasonably. He recounted the evidence surrounding the traffic stop, including the mismatched license plate, false VIN number, and unidentified people hiding under a blanket. The prosecutor stated:

"We want officers not only to enforce the traffic code, we also want them to confirm and identify that the individuals in a car concealing their identity are not under distress. That's just the world we live in where we sort of want officers to confirm that individuals that are hiding their identity aren't being made to do so and that they don't need any help. Who else hides their identity? Unfortunately, in this world fugitives, felons, people that are wanted also hide their identities in a car that the officer knows nothing about. He doesn't know the VIN number. Yeah, so they're going to be asked to get out of the car at the very least to identify them."

The prosecutor therefore argued that "the idea that these officers escalated the situation, they're the ones that made it worse, that bucket just isn't going to hold any water. These officers were doing exactly what we want them to do."

¶ 13    The prosecutor ended his rebuttal closing argument by telling the jury "to sign the verdict forms to finally send a message to this defendant that you have to take responsibility for your behavior" because she "can't go around hiding behind [her] kids" as something bad could happen to her or "[s]omething even worse can possibly happen to those kids." He concluded, "So, for crying out loud, not for the benefit of society or me or anybody else, sign the guilty verdict form because that's the only way this defendant is going to finally take responsibility for her choices and her decisions."

¶ 14    The jury began deliberations after being provided with their instructions. During deliberations, the jury submitted a question asking, "Does proximate cause extend to the actions of another party. 'Domino effect.' " The trial court, with the agreement of the parties, responded, "You have been provided with the law that applies in this case. Please apply the law to the facts and in that way reach your verdict." The jury received Illinois Pattern Jury Instruction, Criminal, No. 4.24, which stated that "the term 'proximate cause' means any cause which, in the natural or probable sequence, produced the injury to a peace officer." The jury returned a guilty verdict.

¶ 15    Following the denial of her motion for judgment notwithstanding the verdict or a new trial, the trial court sentenced defendant, as agreed by the parties, to 12 months conditional discharge and 30 hours of community service. Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant first argues on appeal that the indictment charging her with resisting or obstructing a peace officer causing injury did not state an offense. We review *de novo* the sufficiency of a charging instrument. *People v. Carey*, 2018 IL 121371, ¶ 19.

¶ 18    A criminal defendant has a fundamental right, under both the United States Constitution (U.S. Const., amend. VI) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8), "to be informed

of the nature and cause of criminal accusations made against him." *Carey*, 2018 IL 121371, ¶ 20. In Illinois, this right is implemented by section 111-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3 (West 2022)). *Id.* Section 111-3(a) imposes specific pleading requirements for criminal charges and also applies to the predicate or underlying offense of a charged crime. *Id.* It requires that an indictment: (1) state the name of the offense; (2) cite the statutory provision alleged to have been violated; (3) set forth the nature and elements of the offense charged; (4) state the date and county of the offense; and (5) state the name of the accused. 725 ILCS 5/111-3 (West 2022). "This rule 'protects the defendant against being forced to speculate as to the nature or elements of the underlying offense, thus spreading his resources thin, attempting to rebut all of the possibilities, while the prosecutor merely focuses on the most promising alternative and builds his case around that.' " *Carey*, 2018 IL 121371, ¶ 20 (quoting *People v. Hall*, 96 Ill. 2d 315, 320 (1982)). When an indictment is challenged before trial, it must strictly comply with the Code. *Id.* ¶ 21.

¶ 19 Defendant argues that the indictment is deficient because the phrase "resisted being placed under arrest" does not contain sufficient facts for a charge of resisting arrest. A charging document that charges resisting or obstructing a peace officer with only the statutory language is too general because resisting can be different from obstructing, which can involve a wide range of acts. *People v. Lauer*, 273 Ill. App. 3d 469, 474 (1995). "Obstructing a peace officer is much broader than resisting a peace officer." *Id.* Thus, "a complaint that charges resisting or obstructing in the disjunctive must set forth sufficient allegations describing what physical act or acts of the defendant constituted resisting or obstructing a peace officer." *Id.* Resisting arrest, on the other hand, "does not potentially involve the broad range of actions that obstructing a peace officer can involve." *Id.* "[R]esisting arrest is a physical act that necessarily involves a physical struggle."

*Id.* Thus, for resisting arrest, "[t]he statute's general language is sufficient because it so particularizes the offense that it sufficiently informs the defendant of the precise crime with which he or she was charged." *Id.*

¶ 20    While *Lauer* involved a charge of only "resisting a peace officer," not "resisting or obstructing a peace officer," we find its reasoning instructive here. Defendant was charged with resisting "and or" obstructing a peace officer. Defendant does not contest that the indictment's allegation that she "actively refused to exit a vehicle" was sufficient for the charge of obstruction. See *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004) (determining that a complaint alleging the refusal to exit a vehicle was sufficient for obstruction charge). Thus, because the charge of obstruction was specific and clear, we hold that the charge of resisting did not need to specify any more facts. See *Lauer*, 273 Ill. App. 3d at 474. Moreover, the resisting charge as alleged here necessarily involved a physical struggle by defendant to withstand being placed under arrest. See *id.* The indictment sufficiently informed defendant of the allegations against her and allowed her to prepare a defense. Therefore, the indictment strictly complied with section 111-3 and did not deprive defendant of her constitutional rights.

¶ 21    Next, defendant asserts that the State did not prove her guilty beyond a reasonable doubt. A person commits the offense of resisting or obstructing a peace officer causing injury when: (1) knowing that one is a peace officer, (2) he or she knowingly resists or obstructs, (3) the officer's performance of an authorized act, (4) and proximately causes an injury to the officer. 725 ILCS 5/31-1(a), (a-7) (West 2022); see *People v. Fonder*, 2013 IL App (3d) 120178, ¶ 26. On appeal, we will not set aside a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of a defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 542 (1999); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When considering a challenge to

the sufficiency of the evidence, we determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found all the elements of the crime were proven beyond a reasonable doubt. *Smith*, 185 Ill. 2d at 541. Thus, it is our duty "to carefully examine the evidence while giving due consideration to the fact that the [trial] court and jury saw and heard the witnesses. [Citations.] If, however, after such consideration we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction." *Id.*

¶ 22 Here, defendant challenges the sufficiency of the evidence proving the fourth element— that she proximately caused Katsuleas' injuries. She contends that "if Katsuleas was injured while trying to handcuff [defendant], it was not established that she, as opposed to her children, was the proximate cause of injury." Essentially, defendant is arguing that because it was not established that she was the *sole* proximate cause of Katsuleas' injuries, her conviction cannot stand. She similarly argues that it was not foreseeable that Katsuleas would be injured by the children.

¶ 23 "Proximate cause means any cause that, in [the] natural or probable sequence, produced the injury complained of." *Stanphill v. Ortberg*, 2017 IL App (2d) 161086, ¶ 41. The term "proximate cause" describes two distinct requirements: cause-in-fact and legal cause. *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). Cause in fact requires that the wrongdoer's conduct caused the complained of injury. *Rivera v. Garcia*, 401 Ill. App. 3d 602, 610 (2010). When considering cause in fact, courts employ either the "but for" test or the "substantial factor" test. *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. "Under the 'but for' test, a defendant's conduct is not the cause of an event if the event would have occurred without it." (Internal quotation marks omitted.) *Id.* "Under the 'substantial factor' test, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." (Internal quotation

marks omitted.) *Id.*

¶ 24    Legal cause is established if the injury was foreseeable as a result of the defendant's conduct. *Stanphill*, 2017 IL App (2d) 161086, ¶ 32. "Although the foreseeability of an injury will establish legal cause, the extent of the injury or the exact way in which it occurs need not be foreseeable." *Id.*

¶ 25    We find our decision in *People v. Cervantes*, 408 Ill. App. 3d 906 (2011), instructive. In *Cervantes*, the police suspected the defendant of committing a hit-and-run. *Id.* at 907. The police attempted to perform a traffic stop but the defendant kept driving. *Id.* The defendant eventually stopped his vehicle, fled on foot, and the officers chased him over ice and snow. *Id.* One of the officers slipped on ice, sprained his finger, and sustained abrasions to his forehead. *Id.* The defendant was convicted of resisting a peace officer causing injury after a bench trial. *Id.* at 908.

¶ 26    On appeal, the defendant argued that the State failed to prove that he proximately caused the officer's injuries because he did not punch or kick the officer, and that the weather conditions constituted extraordinary circumstances that relieved him of liability. *Id.* This court disagreed. *Id.* We determined that it was foreseeable that an officer might be injured by falling on snow or ice after the defendant chose to run from the police. *Id.* We also determined that the resisting a peace officer statute does not require a defendant's actions to be the sole proximate cause of an officer's injuries. *Id.* at 910. We therefore concluded that "it is clear that defendant's act of running from the officers was a contributing cause of [the injured officer's] injuries, although it was not the only cause." *Id.*

¶ 27    Here, the evidence from the videos and Katsuleas' testimony permitted a reasonable jury to conclude that defendant proximately caused the injuries to Katsuleas. The video evidence shows that defendant was forcibly removed from the vehicle after her repeated refusals to exit on her

own, thrown to the ground, and physically resisted Katsuleas' attempts to handcuff her. It took Katsuleas one minute and seventeen seconds on the ground to handcuff defendant. It was foreseeable that an officer may be injured as a result of her refusal to exit the vehicle and subsequent physical resistance to being handcuffed while on the ground. Though the children may have also contributed to the injuries, it is clear from the video evidence that defendant's actions were a contributing cause of Katsuleas' injuries. Simply put, Katsuleas would not have been injured but for defendant's actions. As we have determined before, a defendant's actions need not be the sole proximate cause of an officer's injuries. See *id.*; *cf. People v. Wilson*, 404 Ill. App. 3d 244, 250 (2010) (holding that a modified jury instructing stating that the defendant's actions had to be *a* proximate cause of an officer's injuries instead of *the* proximate cause of the officer's injuries was not erroneous because the defendant's actions need not be the sole proximate cause of the officer's injuries). Accordingly, we cannot say that the evidence presented at trial was so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt.

¶ 28    Defendant's last argument on appeal is that the State's rebuttal closing argument contained inflammatory and prejudicial statements. As defendant concedes, this argument was forfeited because the statements were neither timely objected to during trial nor challenged in a post-trial motion. See *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007). However, defendant asserts that we may consider the argument under the plain error doctrine. See Ill. S. Ct. R. 615(a). "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."

*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant contends that the State's remarks during rebuttal argument resulted in error under the first prong of the plain error doctrine. The first step in plain error review is determining whether an error occurred. *Id.*

¶ 29 In general, prosecutors have wide latitude in the content of their closing arguments. *People v. Perry*, 224 Ill. 2d 312, 347 (2007). "They may comment on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant." *People v. Jackson*, 2020 IL 124112, ¶ 82. "Statements must be considered in the context of the closing arguments as a whole [citation], and counsel may comment upon defense characterizations of the evidence or case." *People v. Evans*, 209 Ill. 2d 194, 225 (2004). The challenged comments must be evaluated "in light of the context the language is used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." *People v. Young*, 347 Ill. App. 3d 909, 925 (2004). "A reviewing court will find reversible error only if the defendant demonstrates that the remarks were improper and that they were so prejudicial that real justice was denied or the verdict resulted from the error." *Jackson*, 2020 IL 124112, ¶ 83. We review *de novo* whether a prosecutor's statements were so egregious that they warrant a new trial. *Wheeler*, 226 Ill. 2d at 121.

¶ 30 Defendant argues that several of the prosecutor's comments during rebuttal closing argument created an impermissible "us-versus-them" theme. These include comments such as: "you can't go around hiding behind your kids. If you do that too many times *** [s]omething worse might happen to your kids. *** So for crying out loud, sign the guilty verdict form because that's the only way this defendant is going to take responsibility for her choices and her decisions;" an exhortation that the jury "finally send a message to this defendant that you have to take responsibility for your behavior;" and comments regarding the deputies "doing exactly as we want

them to do" because there are "fugitives [and] felons" who hide their identities from the police and that the deputies were trying to identify the children to "make sure [they] belong with these people."

¶ 31     In support of her argument that these comments were improper, defendant relies on *People v. Johnson*, 2023 IL App (5th) 190426-B. The defendant in *Johnson* was convicted of unlawful possession of cannabis and unlawful possession of a weapon by a felon. *Id.* ¶ 1. During rebuttal closing argument, the prosecutor stated, "And I want to say for a minute out loud that there is a gun that was involved in a drug house that made it on the street to another convicted felon that was loaded. Good job police. They did what we want them to do. They did what they are paid to do. Thank goodness this gun is off the street." *Id.* ¶ 23. Toward the end of the rebuttal argument, the prosecutor stated:

> "So, please, when we sit here, this is your county. We don't have much say in anything now-a-days. The government makes most of the decisions for us, but guess what? You decide what's appropriate today in Williamson County. You get to have that say. Not the [j]udge. Not me. You, with your verdicts. If you feel this behavior of everything that happened here was fine, you have no problem with it, then by all means sign a not guilty verdict. It's your county. You go to church here. Your kids are here. You work here. Your house may be next door to these houses where all this is going on. Do you feel safe? That's up to you, but I don't think the evidence is contradicted." *Id.*

¶ 32     The reviewing court determined that these statements created an impermissible "us-versus-them" theme. *Id.* ¶¶ 41-42. "The prosecutor used the rebuttal portion of closing argument to align the jury's interest in their own safety with the State's interest in convicting the defendant. In making this argument, the prosecutor intimated that if the jury did not find the defendant guilty,

Williamson County would not be a safe place to live, work, or raise children." *Id.* ¶ 42. Despite the impropriety of these remarks, however, the court determined that they did not warrant reversal under the second prong of the plain error doctrine. *Id.* ¶ 45. The court explained that no rational juror could have reached a contrary verdict given the evidence presented and noted that any potential prejudice was limited by the jury instructions. *Id.*

¶ 33    Here, the statements made by the prosecutor do not rise to the level of those in *Johnson*. The statements commenting on the deputies handling of the investigation were brief remarks responding to defendant's argument that the deputies acted excessively or unreasonably. During closing arguments, defendant's attorney stated that "[t]here's certain things that the officer became suspicious of, but there were other ways to dispel that suspicion without removing an entire family from their car at midnight in December in Aurora—close to Aurora." He later pointed out that Katsuleas could have asked defendant or the driver to remove the blanket from over the children and again stated that "[t]here are other ways to dispel the suspicion without removing an entire family from their car in December." He continued by stating that the driver attempted to explain what was going on but that "[i]ts clear that no matter what [the driver] explained that the deputy has made up his mind. *** That's how this situation could have been handled. You had other officers. Clearly, the driver's side door was open. Look at the VIN, run the VIN. There's no issue and we move on. But, instead, we're here today." The prosecutor thus responded to defendant's implication that it was "the officers themselves [that] elevated and created the situation that unfolded" by recounting the evidence related to the traffic stop investigation. As the challenged comments were passing remarks related to defendant's argument and tied to the evidence, we see no impropriety with them.

¶ 34 The "fugitives [and] felons" and making sure the children "belong with these people" comments similarly fall into this context. Again responding to the argument that the deputies acted unreasonably, the prosecutor made these statements while explaining the evidence related to deputies' investigation during the traffic stop. The prosecutor attempted to expound on the concerns to which Katsuleas and Vaughn testified. Both deputies testified about their confusion regarding the situation and Katsuleas specifically stated that he had concerns about the individuals in the back seat "because [he didn't] know who [he was] dealing with *** and why they're concealing themselves from [him]." Based off this testimony, as well as the testimony regarding the lack of a valid VIN and license plate, the prosecutor raised some reasonable concerns that a police officer might have under these circumstances.

¶ 35 The "send a message" and "take responsibility" comments also do not rise to the level of impropriety as in *Johnson*. We have previously observed that "prosecutors walk a fine line when they invite the jury to send a message or teach the defendant a lesson." *People v. Chandler*, 2014 IL App (2d) 130018-U, ¶ 36. On one side of the line, "*limited* prosecutorial exhortations are proper where it is made clear to the jury that its ability to effect general and specific deterrence is dependent *solely* upon its careful consideration of the specific facts and issues before it." (Emphasis in original.) *People v. Johnson*, 208 Ill. 2d 53, 79 (2003). On the other side of the line, "where *** the prosecutor blurs that distinction by an extended and general denunciation of society's ills and, in effect, challenges the jury to 'send a message' by its verdict, he *** interjects matters that have no real bearing upon the case at hand, and he seeks to incite the jury to act out of undifferentiated passion and outrage, rather than reason and deliberation." *Id.*

¶ 36 The prosecutor's remarks here land on the appropriate side of the line. Reviewed in context, it is clear that they are focused on defendant's actions in this case. They were targeted at

defendant taking responsibility for "her choices and her decisions." Those "choices" and "decisions" are defendant's actions at issue in the case, which were referenced throughout the rebuttal argument. Unlike the prosecutor in *Johnson*, who called into question the safety of the jury in their county, the prosecutor here directed his remarks at defendant's specific actions and did not implicate the jury's safety. The comments were thus limited statements based on the facts and not an extended general denunciation of society's ills or an exhortation to the jury to act out of passion or outrage. See *People v. Desantiago*, 365 Ill. App. 3d 855, 865 (2006) (distinguishing between remarks directed toward sending a message to a specific defendant and sending a message to the community at large); see also *People v. Brandon*, 2024 IL App (4th) 230415-U, ¶ 30 (statement urging jury to tell the defendant "no, you don't get to do it [(get away with crime)]" was not improper); *People v. McCurry*, 2020 IL App (1st) 181937-U, ¶ 24 ("The prosecutor focused her argument on *defendant*'s guilt and did not ask the jury to send any general messages by its verdict" (emphasis in original)).

¶ 37 Moreover, the comments were responsive to defendant's arguments that the children caused Katsuleas' injuries. During closing arguments, defense counsel repeatedly stated that there were other causes of Katsueleas' injuries and that "the injury most likely was as a result of [Katsuleas] dealing with the children after the fact [of defendant's arrest.] After [defendant] had already been arrested and removed from the scene, the deputy's still on the ground dealing with these children for over two minutes." Thus, the references to taking responsibility and to the children were responsive to this argument. The prosecutor was asking the jury to see through the deflection of blame onto the children and convict defendant based on her own actions, not for any impermissible considerations. Therefore, none of the prosecutor's challenged comments created an impermissible "us-versus-them" theme.

¶ 38    Next, defendant challenges the prosecutor's statement that "this case is about something all adults know.  You pay a mortgage.  If you have a car, if you register, if you have a job, you understand that your choices and your decisions have consequences that you are ultimately responsible for."  Defendant claims that this implied that the State was telling the jury that the "adult thing" to do was convict defendant and "challenged the maturity of jurors who would not find her guilty."  However, defendant's argument is wholly without support when the statement is placed into context.  Immediately before the challenged statement, the prosecutor said that "this case is not about the kids."  And immediately after the challenged statement, he said "Fundamentally, that means you are responsible for them.  You don't blame it on your kids."  Thus, this is yet another statement in response to defendant's closing argument claiming that the children caused Katsuleas' injuries.  It is clear that the prosecutor was stating that the "adult thing" was for defendant to accept responsibility for her alleged misdeeds, not that the jury needed to do the "adult thing" and convict defendant.

¶ 39    Finally, defendant challenges the prosecutor's statement that "she just refused to get out of the car *** [t]hat's a physical resistance."  Defendant argues that this is a misstatement of the law because "refusing to exit an area is passive non-compliance constituting, at most, obstruction."  A misstatement of law can be grounds for reversal if the jury would have reached a contrary verdict had the misstatement not been made.  *People v. Jackson*, 2012 IL App (1st) 092833, ¶36.

¶ 40    Defendant's argument raises a somewhat unsettled question of law.  In support of her argument, defendant relies on our decisions in *People v. Stoudt*, 198 Ill. App. 3d 124 (1990), *Synnott*, 349 Ill. App. 3d 223, and *People v. Kotlinski*, 2011 IL App (2d) 101251.  However, neither of these cases categorically held that refusing to exit a vehicle cannot constitute resistance.  See *Stoudt*, 198 Ill. App. 3d at 127 (defendant's failure "to remove himself from the 400 block of

Lincoln Highway" was not physical resistance); *Synnott*, 349 Ill. App. 3d at 227-28 (distinguishing *Stoudt* and determining that the refusal to exit a vehicle constituted obstruction); *Kotlinski*, 2011 IL App (2d) 101251, ¶¶ 48-49 (21-second delay caused by defendant's refusal to reenter vehicle during DUI investigation was not obstruction). Conversely, at least one case has determined that the circumstances surrounding the refusal to exit a vehicle can constitute resisting arrest. See *People v. Bobbitt*, 2024 IL App (5th) 230143-U, ¶ 28 (affirming resisting arrest conviction for "intentionally impeded [the officer] by refusing to exit his car" where the defendant caused 21-minute delay resulting in the defendant being physically removed from the car). Indeed, in *Stoudt*, we recognized that there may be circumstances surrounding a failure to move that may constitute resisting arrest. See *Stoudt*, 198 Ill. App. 3d at 127 ("[i]f the officer had attempted to escort defendants from the 400 block of Lincoln Highway and the defendants pushed or struck the officers or fell to the ground or tied themselves to a tree, then there may have been a physical act of resistance").

¶ 41   However, we need not definitively answer this question as reviewing the challenged statement in context reveals that it was a passing remark while the prosecutor reviewed the evidence and was unlikely to have any prejudicial effect. After making the complained-of statement, the prosecutor continued to recount the evidence from the traffic stop that he believed supported a guilty verdict. He concluded this portion of the rebuttal argument by stating that "defendant was making numerous active physical choices to resist that finally resulted her being pulled out, having to be slammed into the ground, and then fought with the officers for a minute before one officer, Officer Katsuleas, was finally able to physically handcuff her. That's all physically resisting. That's all choices and actions that she took. That's why she's guilty of this." Therefore, because this portion of the rebuttal argument thoroughly discussed the evidence that

supported a guilty verdict, it is highly unlikely that the challenged isolated comment had any effect on her conviction.

¶ 42    Even if any of the prosecutor's comments were improper, the jury was repeatedly appropriately instructed that statements of counsel not based on the evidence should be disregarded. Prior to the parties' closing arguments, the trial court instructed the jury:

> "Closing arguments are made by the attorneys to summarize the evidence that you've heard. Any argument that's made that is not based on the evidence should be disregarded by you."

Additionally, shortly after closing arguments, the trial court read Illinois Pattern Jury Instruction, Criminal, No. 1.03 to the jury:

> "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the parties which is not based on the evidence should be disregarded."

"[I]mproper arguments can be corrected by proper jury instructions, which carry more weight than the arguments of counsel." *People v. Willis*, 409 Ill. App. 3d 804, 814 (2011). "Moreover, any possible prejudicial impact is greatly diminished by the court's instructions that closing arguments are not evidence." *Id.* A trial court's instructions that closing arguments are not evidence protect defendant against any prejudice caused by improper comments made during closing arguments. *People v. Quiroz*, 257 Ill. App. 3d 576, 585 (1993). It is presumed that jurors follow the instructions provided by the trial court. *People v. Taylor*, 166 Ill. 2d 414, 438 (1995). Here, we believe that the instructions given by the trial court sufficiently cured any prejudice that may have

resulted from the prosecutor's rebuttal argument. The prosecutor's remarks were not of such a nature that they could not be cured by these repeated instructions from the trial court.

¶ 43 Accordingly, considering the statements made by the prosecutor together and in the context of the whole rebuttal argument, we cannot say that the remarks constituted plain error. Therefore, we hold defendant to the forfeiture of her argument. See *People v. Cook*, 2018 IL App (1st) 142134, ¶ 79. Defendant alternatively contends that we may review the argument because her trial counsel was ineffective for failing to object during trial. This argument also fails, as it is not ineffective assistance to refrain from making an unmeritorious objection. *People v. Nieves*, 193 Ill. 2d 513, 528 (2000).

¶ 44                                    III. CONCLUSION

¶ 45 For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 46 Affirmed.